# Thomas & Sons *versus* Loose, Seaman & Co.

1. Parol evidence is admissible to establish a contemporaneous oral agreement which induced the execution of a written contract, though it may vary, change or reform the instrument; but this agreement must be shown by evidence that is clear, precise and indubitable, and this can only be done by the testimony of two witnesses, or of one witness corroborated by circumstances equivalent to another.

2. If a defendant be permitted, in the cross-examination of a witness, to lead out new matter constituting his own case, which he has not yet opened to the jury, to the injury of the plaintiff, it is a sufficient ground for reversal.

3. It is error to permit a party to a written contract to certify as to what was the motive or the inducing circumstances which had led him to execute the contract.

4. The court below will not be reversed for not instructing the jury specifically, as to matters pertinent to the issue if the party complaining has neglected to present points to the court requesting such instruction.

March 2d, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

| 114 | 35 |
| 125 | 279 |
| 125 | 560 |
| 114 | 35 |
| 128 | 356 |
| 114 | 35 |
| 143 | 407 |
| 114 | 35 |
| 149 | 54 |
| 153 | 22 |
| 114 | 35 |
| 170 | 563 |
| 114 | 35 |
| 171 | 580 |
| 114 | 35 |
| 173 | 329 |
| 114 | 35 |
| 186 | 617 |
| 114 | 35 |
| 201 | 145 |
| 201 | 313 |
| 114 | 35 |
| 19 SC | 476 |
| 20 SC | 141 |
| 20 SC | 254 |
| 20 SC | 477 |
| 114 | 35 |
| 217 | 268 |
| f 33 SC | 593 |
| 114 | 35 |
| f 34 SC | 547 |
| 114 | 35 |
| 35 SC | 438 |

ERROR to the Court of Common Pleas of *Berks county :* of January Term, 1885, No. 291.

Assumpsit brought by J. H. Thomas, trading under the firm name of J. H. Thomas & Sons, against Samuel A. Loose, Charles F. Seaman and Peter M. Shollenberger, trading under the firm name of Loose, Seaman & Co. Plea, non assumpsit with leave, and issue.

The following are the facts of the case as they appeared on the trial before HAGENMAN, P. J.

The plaintiff was engaged in business in Springfield, Ohio, under the name of J. H. Thomas & Sons. His business consisted in manufacturing hay-rakes and tedders, upon orders solicited by traveling sales agents throughout the United States, who, for this purpose, were furnished with blank contracts, which they were authorized to sign with the firm name. At the head of the paper containing the contracts are printed the following clauses :

" This contract subject to the personal approval of J. H. Thomas & Sons.

" It is agreed and understood that, in writing and printing, this paper contains the full and entire agreement between the parties hereto, and no outside verbal understanding is of any force or effect whatever, and is not to be held binding."

On September 12th, 1882, W. B. Smith, plaintiff's traveling agent for Eastern Pennsylvania, &c., called upon Loose, Seaman & Co., the defendants, who were then engaged in the sale of agricultural implements at Hamburg, Berks county, for the purpose of introducing plaintiff's rakes in that section of the country. A contract in the usual form, with the above clauses, was then and there executed for the purchase by defendants of 25 rakes, which were to be delivered by plaintiff on cars at Springfield, and shipped to defendants at Hamburg between January 1st and June 1st, 1883. The total consideration, $487.50, was to be paid by defendants, one half on October 1st, 1883, and one half on January 1st, 1884, with 6 per cent. interest from these several dates.

A duplicate of the contract was at the same time executed and retained by defendants.

The plaintiff received the contract at Springfield on September 14th, 1882, entered it as an order upon his books, and manufactured the rakes thus ordered during October and November following.

In December, 1882, defendants determined to devote themselves exclusively to the foundry business, and, having received an extensive order for castings, notified plaintiff of that fact by letter dated December 21st, 1882, and requested

[Thomas & Sons *v.* Loose, Seaman & Co.]

the rescission and return of their contract of September 12th, 1882.

Plaintiff, having the machines completed and ready for shipment, declined to release defendants, unless they procured some other responsible party in that neighborhood to take their place. Defendants, however, refused, and insisted, by letter of December 29th, 1882, upon absolutely countermanding their order.

The rakes were delivered at Springfield, and shipped on May 4th, and arrived at Hamburg on May 15th, 1883.

Defendants refused to accept them, whereupon they were removed to Philadelphia and stored by plaintiff subject to defendants' order.

After ineffectual efforts to arrange the difficulty, plaintiff on May 30th, 1884, brought this action of assumpsit upon the contract, declaring in special and common counts, and claiming the contract price of the rakes, the expenses and losses incident to their shipment, re-shipment, &c., and interest, aggregating $662.82.

The defendants pleaded non assumpsit, with leave, etc., et issue. A demand for specifications was made under the rule of court, and disregarded by defendants.

Upon the trial, December 2d and 3d, 1884, the execution of the paper declared upon not being denied, the same was offered and admitted in evidence without proof. The plaintiff then called witnesses to prove the fact and time of manufacture, delivery and shipment of the rakes, defendants' failure to accept, and expenses incurred.

Upon cross-examination of these witnesses, defendants were permitted by the court below to introduce, by questions relating to the executing of the contract, to the circumstances surrounding the same, and to certain orders of countermand, a defence based upon an alleged contemporaneous parol agreement with W. B. Smith giving them an unconditional right of countermand up to February 1st, 1883. The evidence in support of this defence was further developed in defendants' case in chief, especial stress being laid upon the fact that notice of countermand was given before shipment, though not denied by plaintiff, who admitted the giving and receipt of the notice, after the completion of the rakes; and concluded with the admission of testimony of the magnitude of plaintiff's business and annual productions. All this evidence went in under exception by plaintiff.

The defendants' allegations as to the parol agreement were positively denied by plaintiff on rebuttal.

The following assignments of error show the evidence objected to and admitted under exception.

The Court erred in its ruling upon the following offer:

" 1. The defendants propose upon cross-examination to ask who executed this contract on the part of the plaintiff's firm.

" Objected to as not cross-examination.

The Court. " The contract having been shown to the witness and he having been asked as to whether they supplied these rakes according to the contract, and the contract having been given in evidence, this question may be put."

" Exception for the plaintiff. Bill sealed."

2. The Court erred in allowing defendants to put the following questions to the witness, W. S. Thomas, on cross-examination:

*Q.* He wrote the signature of J. H. Thomas & Sons to this as party of the first part?

Objected to by the plaintiff; the contract has already been offered in evidence, and its execution being admitted by the defendants, under rule 14 of court, any further testimony as to its execution is irrelevant and immaterial.

The Court. Admitted, and exception noted for plaintiff. Bill sealed.

3. The Court erred in permitting the following cross-examination of the witness W. B. Smith.

*Q.* Who were by when that agreement was executed?

*A.* I think the firm were there—Loose, Seaman & Co.; that is, I think the two gentleman present were there (Loose and Seaman.)

*Q.* Do you know William H. Hoag?

*A.* Yes, sir,

*Q.* Was he by?

*A.* He introduced me to the firm; I cannot say whether he was just there or not. He introduced me to the firm of Loose, Seaman & Co.

*Q.* He was there that day?

*A.* Yes, sir; he introduced me to the firm; I do not know whether he was there at the time of the signing of the contract or not.

The plaintiff objects to any testimony relative to the execution of the contract.

The Court. Exception noted for the plaintiff. Bill sealed.

4. The Court erred in permitting defendants to ask the witness W. B. Smith, on cross-examination, the following question:

*Q.* When you showed these gentlemen that article of agreement, they refused to sign it, stating that they would not make the purchase of the rakes upon the terms embodied in that agreement, and then you said to them that they could give their order for 25 rakes, and if on or before the 1st day

[Thomas & Sons v. Loose, Seaman & Co.]

of February, 1883, they found that they could not sell the rakes, or for any other cause, they were dissatisfied with the arrangement, they could countermand a part or the whole of the order.   Is that true?

Objected to by the plaintiff, as not proper cross-examination.

The Court.   Admitted, and exception noted for plaintiff. Bill sealed.

5. The Court erred in permitting defendants to ask the witness, W. B. Smith, the following question on cross-examination:

*Q.* They (defendants) stated to you that they had countermanded the order prior to the time given by yourself, which time was fixed contemporaneously with the execution of the agreement?

The plaintiff objects to any question of this kind,—

1. Because the defendant has no right to introduce his case on cross-examination, when there was no evidence, in chief relative to the topic or subject as to which it is proposed to interrogate the witness on cross-examination.

2. There is no evidence whatever of any agreement such as is referred to in the offer.

3. The evidence is immaterial and irrelevant.

The Court.   The witness having stated that he called upon the defendants at Hamburg and stated some conversation which he had with the defendants, they may inquire as to the whole of that conversation.   Exception noted for plaintiff. Bill sealed.

6. The Court erred in permitting defendants to ask the witness, W. S. Thomas, on cross-examination, the following question:

*Q.* In December, 1882, you received a letter from Loose, Seaman & Co., countermanding the order of these rakes?

Objected to.

The Court.   The right of countermanding is a future inquiry; how far the order was countermanded, the defendants may give in evidence now.   Exception noted for plaintiff. Bill sealed.

7. The Court erred in admitting the following offer of evidence:

The defendant proposes to prove by the witness on the stand that about some time in September, 1882, W. B. Smith, the duly accredited and lawful agent of J. H. Thomas & Sons, visited the firm of Loose, Seaman & Co., at Hamburg, Pa., and requested them to purchase a number of wire hay-rakes, the manufacture of the plaintiff in this case, and showed to them a certain agreement which he desired to enter into with them. Loose, Seaman & Co. refused to make the purchase upon the terms embodied in that agreement, saying they would have

nothing to do with the purchase of anything under such terms as that agreement sets forth; that the agent Mr. Smith, then said to them that he was fully authorized by his firm to make any contract that he pleased, and that he would so alter and modify this agreement that it would be perfectly satisfactory to them if they would take his word; then stated to them that if they would give their order for 25 rakes, and if for any reason they would be dissatisfied with what they had done, they could notify his firm before the first day of February, 1883, and countermand their order, which the firm would recognize as binding; that upon this statement made by the agent, the defendants were induced to enter into the agreement; that it was made at the time the agreement was signed, and was the inducing circumstance on the part of the defendants to sign the agreement, and the sole reason that they did sign it; that a sample rake was shipped to them from the firm, for which they paid cash to the firm; and finding that they could not handle these rakes, were unable to dispose of them for reasons which the witness will give, they wrote to the firm of J. H. Thomas & Sons, on the 21st of December, 1882, and also on the 29th of December, 1882, countermanding the order for the rakes; that they received letters in reply from the firm of J. H. Thomas & Sons, stating that they had received these letters, but refusing to accept the countermand; that when the rakes came to Reading, they notified Mr. Lessig, the local agent of the plaintiff, that they would not take them; that the rakes were shipped to Hamburg at the order of the plaintiff, and never received by the defendants; and were subsequently shipped to Philadelphia by order of the plaintiff; and that the defendants have never had possession of them, and complied with the terms of the agreement made with the agent of J. H. Thomas & Sons at the time this written agreement was signed.

Objected to by the plaintiff.

1. The pleas of the defendants in this case are non assumpsit with leave [and payment with leave*]; notice was given to the defendants under rule of court to specify the matter proposed to be given in evidence under these pleas, and no such specification has been furnished by the defendants. Therefore this evidence is inadmissible under the pleadings and the rule of court.

2. The contract under which the plaintiff in this case claims is a contract in writing, admitted by the defendants, and already in evidence. The evidence proposed attempts to vary, alter, contradict, and add to the written contract, without

---

* An error. The plea is "Non assumpsit, with leave, &c., et issue."

[Thomas & Sons *v.* Loose, Seaman & Co.]

alleging fraud, accident, or mistake, nor even that the parol contract was the inducing circumstance for the execution of the written instrument.

3. The written contract offered in evidence has at the head of it an agreement in the following words:.

"It is agreed and understood that, in writing and printing, this paper contains the full and entire agreement between the parties hereunto, and no outside verbal understanding is of any force or effect whatever, and is not to be held binding."

Any parol contract varying from the written contract which might previously have been entered into by these parties must therefore be held to have been waived and to be of no binding efficacy.

4. It being shown that the rakes were manufactured by the plaintiff and delivered under and in pursuance of this contract, which has already been shown in evidence, the agreement contained at the head thereof would operate to estop the defendants from setting up any outside agreement in derogation of the written contract, unless actual knowledge of the plaintiff can be shown coupled with consent to the terms of that outside agreement—this contract being expressly made subject to the personal approval of J. H. Thomas & Sons.

5. So far as the offer proposes to give parol evidence of letters written and received, it is objectionable on the ground that the writing itself must be produced.

6. It is generally inadmissible, irrelevant and incompetent.

THE COURT: Offer admitted, and exception noted for plaintiff. Bill sealed.

11. The Court erred in charging the jury as follows:

"Mr. Loose further testifies:

*Q.* If he said anything about his authority, what was it?

*A.* I said to him that he might make us this offer, but perhaps Thomas & Sons would not approve of it. He said he would guarantee their approval; he was their general agent, and whatever he would do in the way of making contracts, they would certainly approve of.

*Q.* Was this said to you before you put your signature to that paper?"

*A.* Yes, sir.

*Q.* What induced you to sign this paper?

*A.* I signed this contract on the basis of these promises from Smith, and no others."

21. The court erred in its ruling upon the fourth and fifth points submitted by plaintiff, viz.:

"4. The stipulations at the head of the contract, first, that the same was subject to the personal approval of J. H. Thomas & Sons; and, second, that no outside or verbal agreement

with the agent could or should be of any force, were notice to the defendants that the agent had no authority to make any outside or verbal agreement varying the terms of the written contract."

"5. The evidence being that the agent had no authority from Thomas & Sons to make any contracts outside of or beyond that contained in the instrument upon which this suit is based, and the form of the contract bearing notice of this fact to the defendants on its face, no such outside verbal agreement can be binding upon the plaintiff in the absence of proof that the plaintiff had actual notice of and approved the same."

[THE COURT: "If the jury find that the defendants were induced to sign the agreement only on the representations made by Smith, who was the agent of the plaintiffs, and as the plaintiffs in suit are seeking to use the instrument in violation of such promise or agreement made at the time the instrument was signed, without which defendants would not have signed it, the stipulations contained at the head of this agreement do not stand in the way of the defendants setting up the verbal stipulations as a defence to this action."]

22. The court erred in saying to the jury:

"As the plaintiffs in suit are seeking to use the instrument in violation of such promise or agreement made at the time the instrument was signed, without which they would not have signed it, the stipulations contained at the head of this agreement do not stand in the way of the defendants setting up the verbal stipulations as a defence to this action."

Verdict for the defendants and judgment thereon, whereupon the plaintiff took this writ, assigning, *inter alia*, the assignments of error above set out.

*M. L. Montgomery* and *G. A. Endlich*, for plaintiffs in error. --The time and order in which witnesses are to be examined, and the extent to which a cross-examination may be permitted to be carried, are largely within the discretion of the court, trying the case. But the principles which control the exercise of this discretion are well settled.

The cross-examination of a witness must be confined to "facts and circumstances connected with the matters stated in his direct examination:" 1 Greenl. Ev. (14th edition) § 445; 1 Whart. Ev. (2d edition) § 549; to these matters exclusively, "or to such questions as may tend to show his bias or interest:" Fulton *v.* Central Bank, 92 Pa. St., 112, 115; and the party "will not be permitted to lead out new matter constituting his own case:" Jackson *v.* Litch, 62 Pa. St., 451; Monongahela Water Co. *v.* Stewartson, 96 Id., 436,

[Thomas & Sons v. Loose, Seaman & Co.]

438; which he has not yet opened to the jury: Ellmaker v. Buckley, 16 S. & R., 72; Castor v. Bavington, 2 W. & S., 505; even where plaintiff is testifying in his own case, since defendants may examine him in chief, as if under cross-examination: Malone v. Dougherty, 69 Pa. St., 46; Monongahela Water Co. v. Stewartson, supra; Hopkinson v. Leeds, 78 Pa. St., 396; Reichart v. Beidleman, 17 S. & R., 41.

The evidence contained in the seventh assignment of error was inadmissible under the pleadings and rule of Court.

Rule XXIV. of the Court is as follows:

"Sec. 9. Where there is leave, under a general plea, to give the special matter, fraud, want of consideration, particular payments, or defalcation in evidence, or the defendant pleads set-off, and does not set forth the matter specially in his plea, or pleads the general issue with leave to justify, a specification in writing, of the special matter, fraud, want of consideration, payment, defalcation, or set-off, or the particular matters on which he intends to rely in justification, if demanded in writing, shall be given to the plaintiff within twenty days after such demand; otherwise no evidence shall be admitted of a special matter hereby required to be specified."

The defendants' plea was non assumpsit with leave, &c., et issue. Demand for specification was duly made upon, and disregarded by defendants' counsel.

Simmons v. West, 2 Miles, 196, and Sullivan v. Johns, 5 Whart., 366, have decided that the affidavit of defence on file is not a compliance with a rule of court requiring specification; (since, if the latter is neglected upon demand, plaintiff has a right to suppose that all intention of insisting upon the defence set up by the affidavit has been abandoned: Sullivan v. Johns, supra); even though the plea filed refer to it as notice of special matter: Erwin v. Leibert, 5 W. & S., 104. Later cases have not varied these rules.

"The facts from which inferences are to be drawn are to be detailed by the witnesses, and the work of inference is for the jury:" TRUNKEY, J., in Juniata B. & L. Ass'n v. Hetzel, 103 Pa. St., 507, 511.

The evidence offered (supposing the former grounds insufficient to require the overruling of the offer) was inadmissible to affect the writing sued upon; the evidence adduced by defendants upon its admission was insufficient for submission to the jury; and the manner of its submission by the court below was unwarranted and erroneous.

Defendants' evidence was insufficient as to kind.—For the purpose of contradicting and varying the writing it must have been "full, satisfactory and indubitable:" Woods v. Farmare, 10 Watts, 195,—"clear, distinct and entirely satisfactory:"

Rearich *v.* Swinehart, 11 Pa. St., 233,—"clear, explicit and un-equivocal:" McGinity *v.* McGinity, 63 Id., 38, 42; Plumer *v.* Guthrie, 76 Id., 441, 455,—carrying conviction "as strong as verbal testimony is able to convey:" Spencer *v.* Colt, 89 Id., 314,—"clear of all reasonable doubt:" Id.—"clear, precise and indisputable:" Rowand *v.* Finney, 96 Id., 192,—"clear, precise and indubitable:" Murray *v.* R. R. Co., 103 Id., 37.

The defendants' evidence is insufficient as to degree. There is oath against oath—a condition of affairs upon which no decree can be made by a chancellor, and no verdict of a jury sustained oversetting a written contract. The principle is clearly established by the decision of GIBSON, C. J., in Brawdy *v.* Brawdy, 7 Pa. St., 157, and of TRUNKEY, J., in Juniata B. & L. Ass'n *v.* Hetzel, 103 Pa. St., 507, 514, citing the fore-going case: Vandegrift *v.* Herbert, 18 N. J. Equity, 466.

*J. H. Jacobs* (*H. P. Keiser* and *J. E. Miller* with him), for defendants in error.—Allowing new matter to be brought out on cross-examination is generally considered as within the sound discretion of the court below. In order to reverse for this cause, it must be an extreme case, in which the discretion has been abused, and in which it is apparent the party has been injured. Where a witness has stated a fact, he may be asked by the other party to detail all the circumstances within his knowledge which qualify it, though they may be new mat-ter and form part of his own case: Jackson *et al. v.* Litch, 12 P. F. S., 451; Gordon *v.* Preston, 1 Watts, 385; Stevenson *v.* Hoy, 43 Pa. St., 191; Henderson *v.* Hydraulic Works, 9 Phila., 100.

It was not error to permit testimony as to what induced the defendants to execute the contract: Duvall, Ex'r, *v.* Darby, 2 Wr., 56; Robinson *v.* Snyder, 1 Cas., 203; Powell *v.* Sedg-wick, 5 Wharton, 336.

Mr. Justice TRUNKEY delivered the opinion of the Court, October 4th, 1886.

This action is founded on a contract signed by the parties. On the part of the plaintiffs its terms were negotiated by their agent; the first line provided that it was subject to their ap-proval, and they did approve it by their signature. Imme-diately following that line, in legible print, quite as bold as the print in most other parts of the contract, is the following: "It is agreed and understood that in writing and printing this paper contains the full and entire agreement between the par-ties thereto, and no outside verbal understanding is of any force or effect whatever, and it is not to be held binding." This at least warned the parties that the entire agreement,

with all its terms and stipulations, is presumed to be set forth in the instrument.

At the beginning of the negotiation the blank was handed to the active partner of Loose, Seaman & Co., who looked it over and at first refused to sign it, but finally affixed the signature of the firm.    There is no evidence that anything was omitted from, or inserted in, the instrument by accident or mistake.    The defendants did not intend that the paper they signed should differ in any respect from what it is; they allege a parol agreement made at the time, which induced them to sign the writing.    This parol agreement, as testified by themselves, is as follows:    " That if for any cause, Loose, Seaman & Co. would desire to change in any way or countermand the order, before the 1st of February, 1883, they should have that privilege.    Thus, in the teeth of a distinct provision of the instrument which they read and signed, they set up an oral agreement which makes the instrument a mere option, which they could refuse at any time before the 1st of February then next.

Parol evidence is admissible to establish a contemporaneous oral agreement, which induced the execution of a written contract, though it may vary, change or reform the instrument. It has been often said that such oral agreement must be shown by evidence that is clear, precise and indubitable; that is, it shall be found that the witnesses are credible, that they distinctly remember the facts to which they testify, that they narrate the details exactly, and that their statements are true. Absolute certainty is out of the question : Spencer v. Colt, 89 Pa. St., 314.    Where it is admitted, as here, that the instrument was read by the party who seeks to reform or avoid it, before the signing thereof, he should be stringently held to the rules of evidence respecting the matter which, if found as a fact, nullifies or reforms the instrument.    The laboring oar is with the party who asserts that the paper which he intelligently signed as containing the entire agreement, is not what it purports.    The instrument itself is the strong evidence to be overcome.    In such a case as this it can only be done by the testimony of two witnesses, or one witness, corroborated by circumstances equivalent to another: Phillips v. Meily, 106 Pa. St., 536.

Upon the defendants' statement of fact, it by no means follows that the agent of the plaintiffs was guilty of fraud at the time of the making of the contract.    The real question is whether there was a parol stipulation, inducing the signing of the instrument, which ought to be made a part thereof to effectuate the intent of the parties.    If so, the instrument may

be reformed, upon evidence to that end which would be sufficient in a court of equity.

When parties and interested persons were incompetent witnesses it was settled that at least two witnesses, or one with the equivalent of another, were necessary to establish an averment against a responsive answer on oath. That meant that the testimony of two disinterested witnesses, or the equivalent, is required to make out a case against the answer. The lawmaking parties and interested persons competent to testify is not intended to subvert the spirit of the rules of evidence in equity cases. Were it so intended two or more plaintiffs or defendants with a breath could nullify a deed or other obligation, and thereby make written evidence as unstable as human memory, or as uncertain as the biased or corrupt testimony of litigant parties. If deeds and other instruments can be thus blown out of sight it would be as well to have none of them. Where one man has an agreement with several others, evidenced by writing, he ought to feel more at rest than if the proof of it was alone in the oral testimony of interested and heated persons. If, in the attempt to overthrow the evidence of the instrument, the question involved is submitted merely as one of fact, he being a witness on one side, and the numerous opposing parties witnesses on the other, there was little or no use in reducing the contract to writing.

In equity the oaths of two of the complainants, will not be considered as destroying the effect of the responsive denial of the answer, unless they seem to be entitled to the weight of two credible witnesses, and in considering their weight the fact of their interest as parties must be taken into consideration: Vandegrift *v.* Herbert, 18 N. J. Eq., 466. So, in a law court, the testimony in support of an equitable claim or defence should be in like manner scanned and considered. Unless care be taken in the instructions to the jury, the facts that the burden is on the party who assails the writing, that the writing itself stands as evidence of the contract until beaten down, and that against the testimony of the party who affirms the writing, testimony equivalent to that of two credible witnesses is essential to successful assault, may escape due consideration.

The signing of the contract was not denied, and under the rules it was admitted in evidence. *Prima facie* that was the contract. All the plaintiffs had to do in addition, was to show their performance, the breach by defendants, and the amount of damage. This they did, and in the doing of it gave no excuse, much less cause, for the court to permit the defendants to inject the matter of their defence into the testimony of the plaintiffs. Their case ought to have been fairly heard. In

the cross-examination of Thomas, after it had already been latitudinous, the court permitted inquiry as to the contents of letters showing a countermand of the order by defendants, and whether he had not received such countermand. In like manner the court permitted cross-examination of Smith respecting the terms of the contract, allowed the defendants to state at length, in a question, the alleged oral stipulation and asks if it was true; and if he did not say he was authorized to so make the agreement.

It needs not citation of authorities to show that a party in the cross-examination of a witness will not be permitted to lead out new matter, constituting his own case, which he has not yet opened to the jury. Such conduct has been repeatedly denounced by the courts as unfair to the opposite party and disorderly. The admission of testimony with respect to its order, is so much within the discretion of the court that tries the cause, and when admitted out of order it is so rare that a party has been injured thereby, that in Pennsylvania no case has been reversed for the sole reason that too much latitude was allowed in cross-examination. It was remarked in Jackson v. Litch, 62 Pa. St., 451, that for error in permitting cross-examination, a case will not be reversed unless discretion had been abused, or it is apparent that the party has been injured. Embodied in the objectionable questions was the heart of the defence. Why were such questions then pressed, if not to gain advantage? True, the answers were in favor of the plaintiffs, but in an emphatic way, out of order, the defendants made the jury hear their answer to the case, and placed the plaintiffs' sole witness to the making of the contract in position to be contradicted by two of their number. We think injury is apparent, and unless the violation of a settled rule of practice in the order of admission of testimony, is not error, the third, fourth and fifth specifications must be sustained. This case seems to be such an one as will be reversed, as intimated in Jackson v. Litch, *supra.*

The matter complained of in the first and second specifications was harmless, it was only a step toward the actual defence that the defendants were about to exhibit before the plaintiffs closed. There is no error in the ruling complained of in the fifth specification—the answer of the witness was part of a conversation on a subject of which he testified in chief. Nor is the eighth specification sustained—no objection was made to the impertinent testimony therein set forth.

Much of the offer which is the subject of the seventh specification was admissible; the court was not bound to separate, and might well have refused the offer; admitting the whole was error. Therein it was proposed to prove by the witness,

not only the alleged oral agreement, but that it "was the inducing circumstance on the part of the defendants to sign the agreement, and the sole reason that they did sign it," and that Smith's statement induced them to enter into the agreement. It was competent to prove all that was said and done. It was for the jury to determine from what was said and done at the making of the contract whether the oral agreement, if proved, induced the defendants to sign the written one. The defendants are not permitted to testify their unexpressed intent, motive or belief, at the time they signed the contract. The thoughts of one party cannot be proved to bind the other. In Spencer *v.* Colt, 89 Pa. St., 314, the very point was decided. The same principle was applied in Juniata B. & L. Ass'n *v.* Hetzel, 103 Id., 507.

Of course, had the impertinent testimony been excluded, the learned judge would not have quoted in the charge what Loose testified when he said he was induced to sign the contract on the basis of Smith's promises. No more need be remarked of the eleventh specification.

None of the remaining assignments is well taken. The plaintiffs' points were mostly affirmed, and no error appears in the answers. What was said in the charge was correct, and did not mislead the jury to points without the case. If the instructions were inadequate to enable the jury to properly consider the testimony, the plaintiffs might have obtained more specific instructions by properly prepared points. The case rarely occurs where the court will be reversed for what was left unsaid, if what was said did not mislead the jury from consideration of the controlling facts in the case, provided that the points were rightly answered. It is in the power of a party to obtain specific instructions on everything pertinent to the issue. When he omits to ask them he cannot complain because they were not given.

In reference to the twenty-second specification of error, of which much was said at the argument, we note that it is the latter part of a sentence, the answer to plaintiffs' fourth and fifth points, beginning with the word "as." Had "that" been used instead of "as" then the fact would clearly have been submitted to the jury. It seems a clerical error, and it is not likely that the jury understood they were not to pass upon the question of fact.

Judgment reversed and *venire facias de novo* awarded.