Townsend Will.
Townsend Trust.

Argued January 3, 1968. Before BELL, C. J., MUS-
MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS,
JJ.

reargument refused May 24, 1968.

*John A. Eichman, 3rd,* with him *Henry I. Koplin,
Elvin R. Souder,* and *Clark, Spahr, Eichman & Yard-
ley,* for appellant.

*Philip A. Bregy,* with him *William M. Marutani,
Thomas S. Weary, Joseph Neff Ewing,* and *MacCoy,
Evans & Lewis,* for appellees.

*J. Brooke Aker, Arthur C. Dorrance, Jr.,* and *Smith,
Aker, Grossman & Hollinger,* and *Dechert, Price &
Rhoads,* for appellees.

320

OPINION BY MR. CHIEF JUSTICE BELL, April 16, 1968:

Mary Hanlon Townsend died October 1, 1965, leaving her last will, dated June 14, 1965, and an inter vivos Trust Deed, dated July 11, 1963, which was thereafter thrice amended. Mary Townsend Cochran, decedent's niece by marriage, has appealed to this Court from the several decrees (actually one decree which covered several subjects) of the Orphans' Court, which sustained decedent's will and her inter vivos Trust and the three amendments thereto. The *final Decree*, from which these appeals have been taken, is as follows:

"AND NOW, March 29, 1967, it is ordered and decreed that proponents' motion to dismiss the caveat, supplemental caveat and second supplemental caveat and also the pleading attacking the inter vivos deed of trust and its amendments is allowed with prejudice, and that this action shall have the effect of the entry of a compulsory nonsuit against contestant; further, that the Register of Wills is directed to probate decedent's last will dated June 14, 1965; and, that the inter vivos deed of trust dated July 11, 1963 and amendments thereto dated February 20, 1964, March 6, 1964, and June 14, 1965 are declared to be valid and enforceable at law.

By the Court

(s) ALFRED L. TAXIS, JR.
President Judge"

We shall summarize the procedural posture of this case, which is very complex and covers some ten pages in appellant's brief, as well as the testimony which covers approximately 1,000 pages. We note that there were ten prior wills or codicils, but only the final will, dated June 14, 1965, is here involved.

Appellant has attacked five documents: (1) decedent's alleged will dated June 14, 1965, because of forgery; (2) decedent's revocable inter vivos Deed of

Trust dated July 11, 1963, because of undue influence and the violation of a confidential relationship; and (3) three amendments to said Deed of Trust, dated February 20, 1964, March 6, 1964 and June 14, 1965, because of forgery.

Decedent's inter vivos revocable Deed of Trust of 1963 provided a life estate for appellant as well as a remainder interest for her and for her issue. This 1963 Trust was first amended on February 20, 1964; this amendment substituted certain charities in lieu of several gifts to appellant and her issue. Settlor's charitable intent was continued in the March 6, 1964 amendment to the Trust, which merely substituted different charities for the previously named charitable beneficiaries. By June 14, 1965, decedent had transferred a substantial portion of her property to her inter vivos Trust and, as a result, her existing will was changed to the one here under attack, namely, her will dated June 14, 1965. Certain legacies were eliminated from the will because they were inserted into the inter vivos Trust amendments, and the principal change was the reduction of contestant-appellant's $100,000 legacy to a legacy of $10,000. Decedent died, we repeat, on October 1, 1965, and her will of June 14, 1965 was thereafter probated.

Appellant, in her very lengthy brief, has reduced her numerous objections and contentions to three questions, although in these questions she has included virtually all of her many and various contentions.

1. Appellant first contends that the Orphans' Court erred in refusing to permit the deposition of 27 (sometimes alleged to be more than 30) individuals and in limiting the testimony and depositions to six persons, who had testified or had been deposed for eight days in a transcript of over 1,000 pages. The names of these 27 desired deposing persons were culled by appellant from the answers to interrogatories served

on appellees, as well as from the many documents. Appellant contends that these 27 persons are individuals "who *might be able to shed light* on the issues."* Appellant further complains that she was not given copies of "all memoranda, correspondence and writings relating to [decedent's testamentary writings] and/or other dealings of the said [executors] with the said decedent," and "was denied access" thereto. This contention was made after appellant had been furnished with copies of all of decedent's testamentary instruments subsequent to December 3, 1960, as well as with the originals of the five instruments she attacks. In addition, a multitude of other writings and records relating to many aspects of decedent's affairs had been tendered to appellant.

Appellant relies upon *Thompson Will,* 416 Pa. 249, 206 A. 2d 21, to support her first contention. In *Thompson Will,* the Court appropriately said (page 261) : ". . . Nothing in this opinion shall be construed as a bar to the allowance of discovery if the matters sought are relevant to the issue of the cause. While 'fishing expeditions' are not to be countenanced under the guise of discovery, requests for discovery must be considered with liberality as the rule rather than the exception."

Under the facts in the instant case, the Orphans' Court committed no abuse of discretion or error of law in disallowing appellant's demand for a further sweeping discovery which in reality amounted to a "fishing expedition," and these contentions of appellant are devoid of merit.

2. Appellant next contends that she has been denied her fundamental right of cross-examination because she was prevented by the hearing Judge from pursuing the questioning of Philip Price, Esq.—who

---

* Italics, ours.

was a witness to the Trust amendment dated February 20, 1964—concerning his whereabouts on that date. Price, one of Philadelphia's outstanding lawyers, had testified on direct examination that he witnessed the settlor sign the Trust amendment on that date. Appellant cross-examined Price, and during the cross-examination Price was unable to remember the exact date he went on a cruise in 1964, or the name of the boat. From this, appellant argues that Price could not have witnessed the settlor's signing of the Trust amendment on February 20, 1964, and that that proves, or tends to prove, that the Trust amendment of February 20, 1964 was a forgery. It was appellant's expressed intention to prove that Price was not in Philadelphia on that date and, therefore, could not have witnessed the signing of the Trust amendment, and this supports her contention that the said Trust amendment must have been a forgery.

The proper scope of cross-examination is a matter for the trial Judge's sound discretion, and that discretion will be reversed by an appellate Court only for an error of law or a prejudicial abuse of discretion. *Rogan Estate,* 404 Pa. 205, 171 A. 2d 177; *Littieri v. Freda,* 241 Pa. 21, 27, 88 Atl. 82; *King v. Holt,* 200 Pa. Superior Ct. 431, 435, 188 A. 2d 760; *Commonwealth v. Minoff,* 363 Pa. 287, 294, 69 A. 2d 145.

In *Rogan Estate,* 404 Pa., supra, the Court said (page 214) : " '. . . In Quigley v. Thompson, 211 Pa. 107, 109, 60 A. 506, it was said that,—"While the general principles applicable to the subject are clearly defined, it is in practice often difficult to determine the exact limits of proper cross-examination. Its range must of necessity rest largely in the discretion of the trial judge," quoted with approval in Littieri v. Freda, 241 Pa. 21, 27, 88 A. 82; see also Glenn v. Philadelphia and West Chester Traction Company, 206 Pa. 135,

137, 55 A. 860; Thomas & Sons v. Loose, Seaman & Co., 114 Pa. 35, 47, 6 A. 326.' "

The law is well and aptly stated in *King v. Holt,* 200 Pa. Superior Ct., supra, at page 435: ". . . The scope or limitation of cross-examination is largely within the discretion of the trial judge and his action will not be reversed in the absence of abuse of that discretion, or unless an obvious disadvantage resulted therefrom to the other party."

We find no prejudicial abuse of discretion, or error of law. Moreover, appellant's contention becomes even more untenable when one considers that on the day following the Court's alleged reversible cut-off of cross-examination, counsel for Price tendered in open Court the information which had been sought and withheld. This line of questioning was not pursued by appellant, nor was the suggestion again made that Price was lying.

3. Finally, appellant argues that the trial Court had no power to grant appellees' motion for a compulsory nonsuit against her after the evidence of both the appellant and appellees had been finished, and that if it did, the decision to grant the nonsuit was against the weight of the evidence. Appellant contends that she stands in the position of a defendant and that nonsuits cannot be entered against defendants.

It will be noted, of course, that the Decree of the lower Court stated "that this action shall have the effect of the entry of a compulsory nonsuit against contestant."

Pa. R. C. P. 1512, Equity Actions, provides: "Nonsuit. The court may enter a non-suit against the plaintiff under the same circumstances, subject to review in the same manner and with the same effect as in actions at law. Adopted Jan. 4, 1952. Eff. July 1, 1952."

Rule 1512 is impliedly incorporated into the Orphans' Court rules and practice by Sup. Ct. O. C. Rules §3, Rule 1. It provides: "Conformity to Equity Practice. . . . Except where otherwise provided by a rule adopted by the Supreme Court or by an Act of Assembly, or by general rule or special order of the local Orphans' Court, the pleading and practice shall conform to the pleading and practice in equity in the local Court of Common Pleas."

While it would have been better for the Decree to have used the word "judgment" instead of "compulsory nonsuit," the language used did not constitute reversible error.

We have carefully considered all of appellant's contentions, and find no merit in any of them.

Decree affirmed; each party to pay own costs.