Townsend Will.

186

Argued May 27, 1969. Before BELL, C. J., COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*Arthur A. Moorshead*, with him *Moorshead & Niccolo*, for appellant.

*Philip A. Brégy*, with him *MacCoy, Evans & Lewis*, for appellees.

*Joseph Neff Ewing*, with him *Arthur C. Dorrance, Jr., J. Brooke Aker, Thomas S. Weary*, and *Dechert, Price & Rhoads*, and *Smith, Aker, Grossman & Hollinger*, and *Saul, Ewing, Remick & Saul*, for appellees.

OPINION BY MR. CHIEF JUSTICE BELL, November 11, 1969:

Mary H. Townsend died on October 1, 1965, leaving a last will dated June 14, 1965. Prior to her death, she had created an inter vivos deed of trust dated July 11, 1963, which was subsequently amended on February 20, 1964, March 6, 1964 and June 14, 1965. Mary Townsend Cochran, who is testatrix's niece by marriage,* evidently disappointed in the share of the decedent's substantial testamentary and inter vivos estate which she was given, has vigorously engaged in multi-litigation in these estates.

Prior to the present appeals, Mary contested the validity of the 1965 will and of the aforesaid deed of trust and the several amendments thereto on several grounds, including particularly forgery and undue influence, and sought sweeping, widespread discovery. In *Townsend Will*, 430 Pa. 318, 241 A. 2d 534, we rejected all her contentions and affirmed the Decrees of the Orphans' Court, which had sustained the validity of all of the above-mentioned documents. The Supreme Court of the United States, on November 12, 1968, denied Mary's petition for a writ of certiorari in those proceedings: *Cochran v. Morris,* 393 U.S. 934.

Subsequent to the filing of our Opinion in *Townsend Will,* 430 Pa., supra, and our refusal to grant reargument, three accounts were filed for audit and adjudication in the Orphans' Court: (1) the account of the executors of the Estate of Mary H. Townsend, (2) the account of the administrator pendente lite, and (3) the account of the trustees of the inter vivos trust. Objections were filed by Mary to each of these accounts and to the petitions for adjudication. On *September 26, 1968,* the accounts were confirmed nisi by the Orphans' Court, with the following notation: "Final con-

---

* Hereinafter referred to as "Mary."

firmation of this adjudication is suspended until such time as the United States Supreme Court acts upon the petition for writ of certiorari filed by Mary Townsend Cochran. If certiorari is denied confirmation will become absolute 10 days thereafter. If certiorari is granted final confirmation is suspended and all further proceedings stayed."

Following the denial of the petition for certiorari by the Supreme Court of the United States, Mary filed petitions for review of the adjudications, in which she requested that the adjudications be set aside and that a new trial be ordered at which she would be given the opportunity to present additional testimony relating to the forgery of certain of the decedent's checks drawn on the decedent's bank account, in order to show (a) forgery of the aforesaid will and trust, and (b) undue influence.* In addition, Mary filed a pleading entitled "Exceptions to Adjudications dated *September 26, 1968.*"** In response or answer to the petitions for review, certain charitable beneficiaries of the will of Mary H. Townsend filed preliminary objections and Mary countered by filing a "Response" to the preliminary objections. Mary followed her "Response" by petitions for review of the original Opinion and Decree of the Orphans' Court which we had earlier affirmed in *Townsend Will*, 430 Pa., supra. Further preliminary objections were filed by the charitable beneficiaries to Mary's new petitions for review. On December 13, 1968, the Orphans' Court sustained all of the preliminary objections and dismissed all of Mary's petitions for review and her exceptions to the Orphans' Court's adjudications. Mary then took the present appeals.

---

* It was not until this appeal was argued that the appellant shifted the emphasis of her attack from the ground of forgery to the ground of undue influence. See, infra.

** Italics throughout, ours.

The Orphans' Court, in its Opinion filed in support of its *December 13, 1968* Decree, stated: "The so-called after-discovered evidence was hopelessly irrelevant and immaterial to any consideration of this issue [the validity of the will and the inter vivos deed of trust] and therefore wholly without merit. . . . There is no merit whatsoever in any request for review."

In "Appellant's Answer [which was filed in this Court] to Appellee's Motion to Quash Appeals," appellant states: "Although this after-discovered evidence [attacking the alleged machinations of appellee's witnesses and of the fiduciaries of the will and the trust] would tend to impeach the credibility of certain witnesses, this would not be the primary purpose of the introduction of same. Rather, such evidence would unequivocally prove a pattern of *forgery* existing at the time of the alleged execution of various codicils by Mary Hanlon Townsend."

Nevertheless, appellant in her brief in these appeals states that "in the former trial . . . she predicated her main contention on forgery; whereas with this new evidence the broader aspects of fraud and undue influence are apparent. . . ." She seeks a new trial "on the basis of after-discovered evidence of the type sought by her . . . in her former trial attacking the validity of wills, codicils and deeds of trust and which new evidence is material to proof of undue influence.* For the purposes of these appeals we deem it unnecessary to review or discuss at length the facts involved and sought to be discovered in this case, because the pertinent facts and circumstances are set forth in *Townsend Will*, 430 Pa., supra. It will suffice to say that Mary now contends that certain (alleged) after-discovered evidence, namely, a checkbook, cancelled

---

* The complete record brought up on these appeals included the record at the prior trial and covered over 2,800 pages.

checks and stubs found in Mrs. Townsend's residence by a tenant, contained forgeries of Mrs. Townsend's signature by Miss Lillian Kelly, the decedent's nurse and companion, and that these forgeries would tend to prove that undue influence had been exercised on Mrs. Townsend, and "other factors such as fraud and forgery loom." Mary offered to prove this forgery and this resulting undue influence by the testimony of the same handwriting expert who testified for Mary in the prior case that the will and the inter vivos trust and its amendments were forged.

Mary's principal contention on these appeals—it is certainly fuzzy and confused—seems to be that such after-discovered evidence together with and in the light of all the evidence in the prior *Townsend* case *requires further discovery* in order to determine whether undue influence was exercised on Mrs. Townsend.

The law is clear that "In order to justify the grant of a new trial on the basis of after-discovered evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence, must not be cumulative or merely impeach credibility, *and must be such as would likely compel a different result*: Hagopian v. Eskandarian, 396 Pa. 401, 407, 408, 153 A. 2d 897 (1959); Commonwealth v. Clanton, 395 Pa. 521, 526, 151 A. 2d 88 (1959) . . ." *Commonwealth v. Schuck,* 401 Pa. 222, 229, 164 A. 2d 13. See, also, *Commonwealth v. Green,* 358 Pa. 192, 56 A. 2d 95; *Bailey's Estate,* 291 Pa. 421, 140 Atl. 145.

Appellant admits in her brief that the newly and after-discovered evidence made or offered *would not* "prove a case per se." Mary's petition for review and the testimony in support thereof convinces us that the essential requirements for a new trial based upon the

alleged after-discovered evidence* have not been proved by Mary, and we find no abuse of discretion or error of law. *Higbee v. Koziol,* 383 Pa. 116, 119, 117 A. 2d 707; *Brannagan v. Great A. & P. Tea Co.,* 352 Pa. 18, 20-21, 41 A. 2d 869.

Decrees affirmed, appellant to pay costs.

Mr. Justice JONES took no part in the consideration or decision of this case.

---

\* We note parenthetically that by appellant's own admission the so-called after-discovered evidence was discovered in August of 1967, which was several months *before* the earlier appeal was argued in this Court, and no remand was sought.