## Tolbert v. Teets

*J. Lauson Cashdollar,* for plaintiff.
*Claude Falkenham,* for defendant.

WALKO, *J.,* June 21, 1983 — Currently before the court is a petition for rehearing filed by defendant, Kenneth Teets, in regard to an order entered by this court on January 13, 1983 dismissing his petition for an order relieving him from his duty to pay alimony. The January 13, 1983 order was entered after a full hearing which resulted in the finding by this court that plaintiff, Ellen Tolbert, did not breach a separation agreement by remarrying or cohabitating with another male as those terms are used in the Divorce Code of 1980.

Defendant's current petition is premised on alleged newly discovered evidence. A rule was issued on plaintiff on February 7, 1983 to show cause why our January 13, 1983 order should not be vacated. A full hearing was then held on March 23, 1983. After careful consideration of the testimony produced at hearing and after review of the briefs submitted by

opposing counsel, this court concludes for the following reasons that the rule must be discharged and our order of January 13, 1983 remain in full force and effect.

The pertinent facts are as follows. Ellen Tolbert and Kenneth Teets were married in March, 1975. During the marriage two children were born, one in 1978 and one in 1979. The parties subsequently separated and retained private counsel in an attempt to finalize a no-fault divorce in Butler County. In contemplation of that divorce, the parties entered into a separation, support, alimony and property settlement that had been drafted by counsel for defendant. That agreement was formally adopted and made an order of the Butler County Court on August 6, 1981. The parties were subsequently divorced on January 11, 1982.

In May 1982, defendant without notice or court approval terminated alimony payments to plaintiff. The matter was subsequently transferred to Beaver County where on September 29, 1982, the Domestic Relations Section of this court attached defendant's wages because of his non-compliance. Shortly after this development, defendant and his legal counsel appeared ex parte in the court's chambers to strongly protest the attachment order. The court pointed out that the proper procedure to follow would be for defendant to petition the court to dissolve the attachment and terminate the order, after a full and complete hearing on all the facts with the parties and their counsel present. Defendant then petitioned this court to dissolve the attachment and relieve him from his duty to pay alimony under the order/agreement.

The point of contention throughout these proceedings has been Paragraph 11 of that agreement.

In its entirety, it states:

(11) Husband agrees to pay Wife during the minority of the parties' Children or until Wife remarries or cohabits with another male, if such marriage or cohabitation occurs sooner, the sum of three hundred dollars ($300.00) per month which sum shall be considered alimony, and which Wife hereby agrees is in lieu of all other future payments for Wife's support except any other payments specifically provided for in this Agreement. Wife hereby waives all further or future claims against Husband for her separate support and maintenance, except demand that the amounts be paid which Husband agrees in this Agreement to pay to Wife, and Wife covenants and agrees to save, defend and hold harmless Husband from the consequences of her failure to do so. The covenants and promises of this numbered paragraph shall be enforced in a manner consistent with the Divorce Code of the Commonwealth of Pennsylvania.

The thrust of defendant's complaint here and in earlier proceedings has been that plaintiff has cohabitated with defendant's brother since the date of the separation agreement and has therefore forfeited her right to alimony under that agreement. Although the agreement does not define cohabitation, defendant steadfastly maintains that the term is synonymous with an act of sexual intercourse.

On November 30, 1982, a full hearing was held on defendant's petition. Thereafter, we concluded that plaintiff did not remarry nor cohabit with another male as those terms are used in the Divorce

Code of 1980 on or after August 6, 1981, the date the settlement agreement was entered as an order of court. Defendant's petition was therefore dismissed by our January 13, 1983 order.

Defendant did not appeal from that order. Instead, he filed the petition for re-hearing that is the subject of this opinion.

To secure a new trial or re-hearing on the basis of after-discovered evidence, the evidence must have been discovered after the trial and must be such that it could not have been obtained at the trial by reasonable diligence. The evidence must not be cumulative or merely impeach credibility and must be such as would likely compel a different result. Townsend Will, 436 Pa. 185, 258 A.2d 518 (1969). Similarly to secure a new trial on the ground of discovery that false testimony was given at trial the complaining party must be able to meet the general test applied to applications for a new trial on the ground of after-discovered evidence. Limper v. Philadelphia Electric Co., 297 Pa. 204, 146 A.574 (1929).

In his petition for rehearing, defendant indicated that his brother David would recant prior sworn testimony and would now admit that he did cohabit with plaintiff during the period she was receiving alimony under the agreement. Defendant also indicated that he had recently discovered two witnesses who would present credible evidence as to cohabitation between plaintiff and David Teets.

At the March 22, 1983 hearing, the matter of whether or not the brother David had been advised of the serious criminal consequences of rendering false testimony had been explained to him were raised. Counsel for both parties informed the court that they agreed he should be so advised and that

neither had done so. It is noteworthy that David was present without legal counsel. The legal counsel for defendant requested that the court do so and a partial "colloquy" was undertaken by the court with great reluctance. A recess was requested after which the court was advised that David Teets would not testify. As such, that witness's prior testimony that he had not cohabitated with plaintiff remained unrebutted. Furthermore, the testimony of the other two witnesses called by defendant has not satisfied this court that a rehearing should be granted. Robert Klear, a former roommate of David Teets testified that David slept at their apartment only 30 percent of the time. On cross-examination, however, he admitted that David Teets spent time at his marital home with his former wife. He further testified that he only occasionally reached David at the home of plaintiff.

Gary Radar testified that he knew that David was living with plaintiff. He also testified that on one occasion he had helped David Teets remove articles of furniture and some bags of clothing from plaintiff's apartment back to his marital home. Doubt was cast on this witness's knowledge when he admitted on cross-examination that he had only been to plaintiff's apartment on the date he helped David move furniture; that he had never attempted to call or reach David Teets at plaintiff's apartment, and that he had never conducted any surveillance to support his contention that David cohabitated with plaintiff. This witness also did not know how long David Teets clothes had been in plaintiff's apartment.

Finally, defendant called plaintiff as on cross-examination. While he elicited from her that David removed a bed, television and clothes from her apartment, she later explained that those articles of

furniture were only being stored there and that she had washed David's clothes as a favor to him.

We are not satisfied that such evidence warrants a new hearing. It adds nothing new to the facts that lead to our January 13, 1983 order. In its entirety, the facts show no more than that plaintiff did date defendant's brother after the separation agreement was signed; that David Teets did spend time at plaintiff's house; that they on occasion had sexual intercourse; and that while dating plaintiff, David Teets maintained a separate residence. In our mind, such conduct is not cohabitation.

While the separation agreement by its very terms is to be enforced in a manner consistent with the Divorce Code, neither the agreement nor the code defines the term cohabit or cohabitation.

Defendant, citing Commonwealth ex rel. Dittman v. Dittman, 174 Pa. Super. 599 101 A.2d 145, (1953) and a host of cases from other jurisdictions, suggests that we conclude that cohabitation is a single act of sexual intercourse or the act of spending one night together. Even a casual perusal of those cases cited by defendant would lead one to the obvious conclusion that they are not applicable to the matter presently before the court.

Dittman defined cohabit in terms of an anti-bastardly statute. The purpose of the statute was to provide means for legitimating bastards. As the opinion pointed out "facts tending to show compliance with the statute should not be overcome by technicalities". Another case, State v. Brown 108 So.2d 233 (1959) attempted to define cohabitation in the framework of a Louisiana criminal miscegenation statute. Clearly defendant's cases are of no aid to the court.

Where a word or phrase is not specially defined in an act the Statutory Construction Act (1 Pa.C.S.A. §1903(a) ) requires that words and phrases be construed according to their common and approved usage.

Blacks Law Dictionary defines "cohabitation": To live together as husband and wife. The mutual assumption of those marital rights, duties and obligations which are usually manifested by married people, including but not necessarily dependent on sexual relations.

Ballentine's Law Dictionary defines "cohabit" To live together as man and wife, to live together as though conjugal relations existed. 2 Am. Jud. Adult 8 1: to have sexual intercourse illegally.

The same dictionary defines "cohabitation" as: A dwelling together of a man and a woman in the same place in the manner of husband and wife. The word does not necessarily imply sexual intercourse but may mean simply that a man holds out to the world as his wife, more than one woman and that he provides homes for them, supports them and acknowledges them as his wives.

Webster's New Collegiate Dictionary defines "cohabit" to live together in a sexual relationship when not legally married.

The common thread that runs through these various definitions is that cohabitation entails a dwelling or living together with a holding out as husband and wife. Common usage dictates that the term cohabit implies more than dating or sexual intercourse.

Since the agreement is to be enforced in a manner consistent with the Divorce Code, it is also appropriate to look at that code and its legislative intent for guidance.

Section 102 of the Code provides in pertinent part:

(a) The family is the basic unit in society and the protection and preservation of the family is of paramount public concern. Therefore, it is hereby declared to be the policy of the Commonwealth of Pennsylvania to:

     ⊛   ⊛   ⊛   ⊛

(3) Give primary consideration to the welfare of the family rather than the vindication of private rights or the punishment of matrimonial wrongs.

(4) Mitigate the harm to the spouses and their children caused by the legal dissolution of the marriage.

(6) *Effectuate economic justice between parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights.* (Emphasis added.)

Section 501 (e) states:

An order entered pursuant to this section is subject to further order of the court upon *changed circumstances of either party of a substantial and continuing nature* whereupon such order may be modified, suspended, terminated, reinstated or a new order made. Any such further order shall apply only to payment accruing subsequent to the petition for the requested relief. *Remarriage of the party receiving alimony shall terminate the award of alimony.* (Emphasis added.)

Section 507 reads:

No petitioner shall be entitled to receive any award of alimony where such petitioner has entered into cohabitation with a person of the opposite sex who is not a member of the petitioner's immediate family within the degrees of consanguinity subsequent to the divorce pursuant to which alimony is being sought.

Thus while remarriage terminates an alimony award and cohabitation is a bar to alimony, the code is not clear as to whether Section 507 bars only the granting of an award of alimony or if it forms a basis for termination of a previous order upon changed circumstances under Section 501(e). Our research discloses no Pennsylvania cases that have dealt with this issue. We note, however, that Section 501(e) allows for a modification of an alimony order based on changed circumstances of a substantial and continuing nature. The implication that follows is that cohabitation would have to be of a substantial and continuing nature to bar alimony.

Cohabitation, as that term is used in the Divorce Code, implies to this court some permanency of relationship coupled with more than just occasional sexual activity. It implies a commitment between two people. Mere unchastity or occasional post-marital indiscretion are not, by themselves, causes for reducing or terminating an alimony award. Any other conclusion would go against the legislative intent of the statute which attempts to base alimony on the actual need while effectuating economic justice between the parties.

Because we conclude that defendant has not produced evidence that satisfies us that plaintiff cohabitated with another male after signing the August 6, 1981 separation agreement, his motion for rehearing must be denied. We therefore enter the following.

## ORDER

And now, June 21, 1983, defendant's motion for a rehearing in this matter is denied. This court's order of January 13, 1983 remains in full force and effect.