512 A.2d 6

Elizabeth I. McGurl BENESHUNAS, Appellee,

v.

INDEPENDENCE LIFE AND ACCIDENT INSURANCE COMPANY, Appellant.

Superior Court of Pennsylvania.

Argued March 12, 1986.

Filed June 13, 1986.

Gilbert F. Casellas, Philadelphia, for appellant.

Felix P. Gonzalez, Philadelphia, for appellee.

Before WICKERSHAM, WIEAND and POPOVICH, JJ.

WIEAND, Judge:

Elizabeth McGurl Beneshunas was the beneficiary of a policy of insurance issued by Independence Life and Accident Insurance Company to provide indemnity in the event of the accidental death of the beneficiary's son, Harry McGurl. The insured was killed when the tractor trailer unit which he was operating collided with a concrete bridge abutment. The insurance company denied liability pursuant to a policy exclusion applicable to death caused in whole or in part by the insured's intoxication. Beneshunas sued and, following trial without jury, recovered a verdict for $15,000.00. The insurer's motion for post-trial relief was denied, and judgment was entered on the verdict.

On appeal, the insurer contends (1) that the trial court's findings were not supported by the evidence, and (2) that the trial court committed an abuse of discretion when it denied the insurer's request to reopen its case for the purpose of hearing the testimony of the insured's widow.

The written policy provided as follows:

"The company shall not be liable for any loss to which a contributing cause was the insured's being intoxicated or under the influence of any narcotic unless administered on the advice of a physician."

At trial, the beneficiary established that her son, the insured, had died as a result of accident. The burden was then upon the insurer to show by a fair preponderance of the evidence that a contributing cause of the accident had been the insured's intoxication. The trial court determined that the appellant-insurer had failed to meet this burden.

"In reviewing the findings of the trial judge, the test is not whether the appellate court would have reached the same result on the evidence presented, but [whether], after due consideration of the evidence, a judge could reasonably have reached the conclusion of the trial judge." *Delahanty v. First National Bank, N.A.*, 318 Pa.Super. 90, 113–114, 464 A.2d 1243, 1255 (1982). See: *School District of City of Harrisburg v. Pa. Interscholastic Athletic Assn.*, 453 Pa. 495, 499, 309 A.2d 353, 356 (1973). The evidence must be viewed in the light most favorable to the party prevailing at trial. *Delahanty v. First National Bank, N.A., supra*, 318 Pa.Super. at 114, 464 A.2d at 1255; *Krobot v. Ganzak*, 194 Pa.Super. 49, 52, 166 A.2d 311, 312 (1960). In examining the evidence of record and the trial judge's conclusions based on the evidence he found credible, we are cognizant of the rule that it is not the province of an appellate court to find facts nor substitute its judgment for that of the trial judge. *Delahanty v. First National Bank, N.A., supra; Stowe v. Booker*, 284 Pa.Super. 53, 57, 424 A.2d 1388, 1390 (1981). Therefore, we accept the trial judge's findings with respect to the credibility of the witnesses and the weight to be accorded their testimony. *Delahanty v. First National Bank, N.A., supra; In Interest of Black*, 273 Pa.Super. 536, 543, 417 A.2d 1178, 1182 (1980); *Commonwealth ex rel. Pruss v. Pruss*, 236 Pa.Super. 247, 249, 344 A.2d 509, 510 (1975).

Trooper Eugene Baidas, a twenty-five year veteran of the Pennsylvania State Police, testified that on the afternoon of

May 8, 1979, he had overtaken and followed McGurl's tractor trailer while it was traveling north on I–81. He testified that McGurl, although within the speed limit, appeared to be driving erratically. When Trooper Baidas attempted to pass McGurl, the tractor trailer drifted from the driving lane into the passing lane, nearly forcing the police vehicle off the road. After completing the pass, Trooper Baidas observed in his rear view mirror that McGurl had pulled his rig off the road and had stopped near an exit ramp. The trooper turned his vehicle around and approached the truck to determine the condition of the driver. After Baidas had exited his vehicle, he asked McGurl, who had alighted from the cab of the truck, for his driver's license. McGurl, the trooper testified, climbed the ladder to the cab, retrieved his license, and descended to the road, all without assistance. Upon being questioned, McGurl assured Trooper Baidas that he had not been drinking, was not taking medication and was not tired. During the period of five minutes in which McGurl was in the trooper's presence, Baidas did not detect an odor of alcohol on McGurl's breath. Baidas testified that although he believed "there was something wrong," he did not then conclude that McGurl was intoxicated. Baidas testified that he had told McGurl to remain where he was and used his radio to request another patrol car to check on McGurl. He then drove away. A few minutes later, he said, he learned via radio that McGurl's tractor trailer had struck the bridge abutment.

Dr. Richard Bindie, a pathologist at Pottsville Hospital, conducted an autopsy. He extracted both blood and urine from McGurl's body and submitted samples thereof for chemical testing. These tests disclosed that McGurl's blood contained an alcoholic content of .33 percent, and his urine contained alcohol of .30 percent. He concluded that McGurl had been drinking before the accident. He also said that McGurl had had a history of epilepsy and conceded that an epileptic seizure while McGurl had been driving the truck was a possibility.

Mrs. Beneshunas, to rebut the charge that her son had been intoxicated, testified that he had stopped at her home four or five hours before the accident. At that time, she said, he consumed no alcoholic beverages; and when she kissed him goodbye, she did not detect the odor of alcohol on his breath. She testified further that her son was an epileptic and had occasionally suffered seizures. One of these seizures, she said, had occurred in her home a week or two before the accident.

■■■■ In civil cases in which the intoxication of a driver is an issue, the results of blood tests are admissible. See: *Ackerman v. Delcomico,* 336 Pa.Super. 569, 575, 486 A.2d 410, 414 (1984). Indeed, where a blood alcohol content of more than .10 percent is shown, a jury may infer intoxication. See: *Couts v. Ghion,* 281 Pa.Super. 135, 144, 421 A.2d 1184, 1189 (1980); *Cusatis v. Reichert,* 267 Pa.Super. 247, 251–252, 406 A.2d 787, 789–790 (1979); *Schwarzbach v. Dunn,* 252 Pa.Super. 454, 462, 381 A.2d 1295, 1298 (1977). See also: 75 Pa.C.S. § 1547(d)(3). Such evidence, however, is not conclusive. An inference of intoxication may always be rebutted by evidence tending to show that the driver was not under the influence of alcohol. Cf. *Commonwealth v. DiFrancesco,* 458 Pa. 188, 193–194 & n. 3, 329 A.2d 204, 207–208 & n. 3 (1974) (analyzing statutory inference of intoxication in the context of a criminal case).

■■ In the instant case, the totality of the evidence did not require a finding that intoxication of McGurl was a contributing cause of his fatal accident. Rebutting the possible inference to be drawn from the results of the blood and urine tests was the testimony of Trooper Baidas, who said that minutes before the accident he had not smelled alcohol on McGurl's breath and did not then believe that McGurl was under the influence of alcohol. Similarly, the substance of Mrs. Beneshunas' testimony and McGurl's history of epilepsy were such as to cause a factfinder to hesitate before accepting as conclusive the results of the chemical tests of the decedent's blood and urine.

The total substantive evidence required a determination by the trial judge regarding its credibility and weight. The trial judge's findings do not disclose a capricious disregard of credible evidence; neither are they unsupported. Under these circumstances, it is not the province of a reviewing court to substitute its judgment for that of the trier of the facts.[1]

■ We are constrained to conclude, however, that the trial court committed an abuse of discretion when it refused to hear the testimony of McGurl's widow. Deborah Geist had been subpoenaed to testify by the plaintiff, Mrs. Beneshunas, but had failed to appear. On the morning following the taking of testimony, she telephoned counsel for the insurance company. The conversation was recorded. Thereafter, a request was made to the trial court to reopen the defendant's case to receive testimony from Mrs. Geist. The trial court denied the request.

The offer of proof made by appellant's counsel was that Mrs. Geist, if called, would testify that she had been offered money to testify falsely on behalf of appellee. She would have testified further that McGurl rarely suffered from epileptic seizures and did not experience a seizure within the one or two weeks before the accident as testified by appellee. She also would have testified, according to the offer of proof made to the trial court, that she had been in the company of McGurl until a short time before the accident and that they had visited a tavern. In addition, she

---

1. We disagree with the trial court's suggestion that appellant presented *no* evidence that McGurl's intoxication, if such was the fact, had contributed causally to the accident. McGurl's blood alcohol content, as shown by blood and urine tests, was sufficient to create an inference that McGurl was unfit to drive a motor vehicle. See: *Schwarzbach v. Dunn,* 252 Pa.Super. 454, 462, 381 A.2d 1295, 1298 (1977). That McGurl was unfit to drive was confirmed by the testimony of Dr. Bindie. When McGurl's unfitness to drive is considered in light of the circumstances surrounding the occurrence of the accident, i.e., the truck left the travelled portion of highway after it had been observed being driven in an erratic manner, it seems clear that there was sufficient evidence, if found credible, to support a finding that intoxication was a contributing cause of the accident.

would have described the food eaten and the alcohol consumed by her husband before he began his trip.

This testimony, in view of the intoxication issue upon which the right of recovery depended, was both relevant and important. The trial court denied the defense request because it believed, contrary to defense counsel's contention, that the defendant should have known of Mrs. Geist's testimony before it rested. The court's opinion suggests that it denied the request to reopen the defense case because it applied standards applicable to a motion for new trial based on after-discovered evidence.[2] We conclude that the court committed an abuse of discretion.

■ The Supreme Court, in *In re J.E.F.*, 487 Pa. 455, 458, 409 A.2d 1165, 1166 (1979), said "[t]he general rule is that 'a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, but such matters are peculiarly within the sound discretion of the trial court....' Such a ruling will be disturbed only if the court has abused its discretion. *Thomas v. Waters*, 350 Pa. 214, 38 A.2d 237 (1944)." See also: *Commonwealth v. Deitch Co.*, 449 Pa. 88, 100–101, 295 A.2d 834, 841 (1972); *Van Buren v. Eberhard*, 377 Pa. 22, 29, 104 A.2d 98, 101 (1954). However, a case should ordinarily be reopened "where it is desirable that further testimony be taken in the interest of a more accurate adjudication (*Thomas v. Waters, supra; Massachusetts B. & I. Co. v. Johnston & Harder, Inc.*, 343 Pa. 270, 22 A.2d 709 (1941)) and where an honest purpose would be justly served without unfair disadvantage (*Van Buren v. Eberhard, supra* )." *In re J.E.F., supra*, 487 Pa. at 459, 409 A.2d at 1166.

The testimony of Mrs. Geist would have contributed to a more accurate determination of the state of McGurl's sobri-

---

**2.** In order to warrant a new trial for after-discovered evidence, "the evidence must have been discovered after the trial and must be such that it could not have been obtained at trial by reasonable diligence, must not be cumulative or merely impeach credibility and must be such as would likely compel a different result." *Freed v. Priore*, 247 Pa.Super. 418, 424, 372 A.2d 895, 899 (1977), quoting *Townsend Will*, 436 Pa. 185, 190, 258 A.2d 518, 520 (1969).

ety at the time of the fatal accident. As McGurl's wife at the time of the accident,[3] she was familiar with his health and with whether or not he had experienced epileptic seizures; she was also familiar with his consumption of alcohol prior to the accident. Contrary to the trial court's suggestion, it does not appear that appellant's failure to produce the witness before resting his case was the product of either sloth or carelessness. It had been represented to the court by the plaintiff during a discussion regarding the witness' failure to appear in response to plaintiff's subpoena that the witness would have testified that the decedent had drunk only one beer before the accident. This was substantially at variance with that which she told defense counsel via telephone after the defense had rested. In any event, the significance of the witness' testimony and the contribution which it would have made to an accurate adjudication suggest most strongly that the trial court should have heard it. We hold, therefore, that to refuse to permit the defendant to reopen its case to present evidence of such importance was an abuse of discretion.

Reversed and remanded for a new trial. Jurisdiction is not retained.

POPOVICH, J., files a concurring and dissenting statement.

POPOVICH, J., concurring and dissenting:

I agree with the Majority's grant of a new trial on the issue of the proffered testimony of decedent's widow. However, I respectfully but vigorously disagree with the Majority's rejection of the intoxication issue.

At page 9, the Majority states that "the trial judge's findings do not disclose a capricious disregard of credible evidence; neither are they unsupported."

My reading of the record convinces me that the evidence—the credible evidence—of intoxication was overwhelming: the accident, the erratic driving, decedent's de-

3. Mrs. Geist remarried after McGurl's death.

parture contravening police instructions, and the testimony of the pathologist who performed the autopsy upon decedent whose blood alcohol content was .33!

In its brief opinion, the trial court wrote that appellant *"did not present any* evidence on the issue of causation," (emphasis supplied) an astounding conclusion under the facts adduced. Indeed, if this were a trial (assuming decedent had survived, of course) on the charge of drunken driving, these facts would be more than enough for conviction beyond a reasonable doubt. Here, of course, the standard is by the fair preponderance of the evidence.

I agree that it is not our prerogative to substitute our judgment for that of the trier of facts, but, surely, to say there was *no evidence* of causation is to ignore the imposing and heavily preponderant credible evidence presented instantly.