548 A.2d 281

**Earl J. CROSBY, Appellant,**

**v.**

**COMMONWEALTH of Pennsylvania DEPARTMENT OF TRANSPORTATION and Richard Rickers and Dorothy Rickers, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 14, 1988.

Filed Sept. 26, 1988.

Stephen P. Lagoy, West Chester, for appellant.

Alexis Barbieri, Norristown, for appellees.

Before CAVANAUGH, ROWLEY and POPOVICH, JJ.

POPOVICH, Judge:

This is an appeal from the order of the Court of Common Pleas of Chester County denying post-verdict relief to the plaintiff/appellant, Earl J. Crosby. We affirm.

This case was commenced by the filing of a praecipe for the issuance of a summons in trespass by the plaintiff against the Commonwealth of Pennsylvania, Department of Transportation, and Richard and Dorothy Rickers.[1] After service of the summons, a rule was issued upon the plaintiff to file a complaint. A complaint was duly filed alleging that on or about September 5, 1980, at approximately 7:40 p.m., the plaintiff was operating his vehicle on Greenhill Road in the Township of West Goshen, a public highway, owned, controlled and maintained by the Commonwealth of Pennsylvania.

At the time and place stated, it was averred by the plaintiff that an unidentified vehicle being driven in the opposite direction to his, entered and encroached upon his lane of travel, thereby causing the plaintiff to drive his vehicle to his right and off the paved road and onto the Rickers' property. His vehicle came to rest after travelling approximately 100 feet and striking a tree and utility pole.

At trial, the allegations contained in the complaint were testified to by the plaintiff. As is relevant herein, additional evidence was produced by the Commonwealth which showed that the police arrived on the scene within three (3) minutes of the accident and detected an "odor of alcohol" emanating from the plaintiff as he sat semi-conscious in his vehicle awaiting emergency treatment.

1. Prior to trial, the Rickers executed a joint tortfeasors release and were dropped as parties to the suit.

Once the plaintiff arrived at Chester County Hospital, within five (5) to ten (10) minutes thereafter, blood was drawn from the victim. A serum test was completed by 8:30 p.m., with the results reading 123.4 mg/dL. With the aid of the Commonwealth's toxicologist/expert, the test results were interpreted to indicate the presence of .101% ethol alcohol in the plaintiff's blood at the time of the accident. Further, the toxicologist opined that a .101% blood-alcohol level in an individual renders him/her unfit to operate a motor vehicle safely because of the impairment of one's vision, judgment and perception/reaction.

With the plaintiff's presentment of his case, he was unable to recall whether he had consumed any alcohol on the day in question. His mother, who testified to seeing him approximately thirty (30) minutes prior to the accident, did not notice whether her son was inebriated or smelled of alcohol.

Following the entry of a jury verdict, in which the plaintiff was found to be 70% contributorily negligent and the Commonwealth 30% negligent, post-trial motions were filed and denied by order dated May 27, 1987. The plaintiff's effort to seek leave to amend, by petition, his post-trial motions was likewise denied by order dated May 29, 1987.

A notice of appeal was filed June 3, 1987, and was taken from the order entered in this matter on May 27, 1987.

 Albeit the denial of post-trial motions is not a final order as that term is contemplated by statute (see 42 Pa.C.S. § 742; Pa.R.App.P. 903(a)), the fact that the plaintiff did reduce to judgment the jury verdict of July 3, 1986, by praecipe,[2] saves the order at issue from being labelled interlocutory. In the future, however, we would advise that the proper, procedural course to pursue in perfecting an appeal from an adverse jury verdict is to reduce the verdict to judgment and take an appeal therefrom and not from an order denying post-trial motions. Appeal lies from the judgment entered and not the denial of post-trial motions;

2. May 19, 1988, was the date the praecipe was filed with the prothonotary of Chester County.

nor is the denial of a petition seeking leave to file supplemental post-trial motions a final, appealable order. Rule 903.

■ The first issue raised by the plaintiff charges that the trial court, as a matter of law, committed err in denying his motion in limine to exclude evidence of alcohol consumption and blood-alcohol level.

The law is well-settled in this jurisdiction with regard to the admissibility of blood-alcohol tests in civil litigation; to-wit:

> Blood alcohol level alone may not be admitted for the purpose of proving intoxication. There must be other evidence showing the actor's conduct which suggests intoxication. Only then, and if other safeguards are present, may a blood alcohol level be admitted.

*Ackerman v. Delcomico*, 336 Pa.Super. 569, 576, 486 A.2d 410, 414 (1984); *Couts v. Ghion*, 281 Pa.Super. 135, 421 A.2d 1184 (1980); *Schwarzbach v. Dunn*, 252 Pa.Super. 454, 381 A.2d 1295 (1977).

It is the plaintiff's contention that the Commonwealth's inability to produce evidence of his conduct *prior* to the collision, suggestive of his intoxication, precludes it from introducing evidence of the blood-test results and the expert's interpretation thereof as affecting his (the plaintiff's) ability to drive safely. In support thereof, the plaintiff cites *Dove, Administratrix v. Gruber*, 23 Lebanon County L.J. 118 (1986), wherein the court denied the defendant's motion to reconsider the exclusion of the decedent's blood-alcohol test on grounds that no additional evidence of intoxication at the time of the accident was presented, save for the test.

In particular, the *Dove* court noted that there was no testimony that an "odor of alcohol" was detected on the decedent, especially since a case of beer had been broken in the interior of the vehicle as a result of the accident. Also, because the .213% blood-alcohol test results came from blood pooled in the pericardial sac of Dove's heart, the test

result was falsely and significantly elevated between 0.05 and 0.09 percentage points. Thus, Dove's blood-alcohol count (BAC) was of "doubtful accuracy" because the blood was drawn from the victim's heart, and this, the court concluded, rendered the test results "susceptible to contamination thereby creating an erroneous BAC reading." As a result, the jury was not permitted to hear the BAC reading or the defendant's expert's analysis of the test.

Instantly, unlike *Dove*, we had testimony that an "odor of alcohol" was smelled upon the plaintiff by the police officer who arrived on the scene. The fact that the plaintiff, his mother and Mrs. Rickers could not confirm the presence of an aroma of alcohol on the plaintiff was a credibility question to be resolved by the jury, rather than having this information totally excluded from the consideration of the trier-of-fact weighing on the causation factor.

We find that the .101% level of intoxication, especially when joined with the expert's testimony that the same would impair one's motor skills, was properly admitted by the trial court for the jury's consideration in assessing what transpired on the evening in question. Especially is this so since we have evidence that the plaintiff smelled of alcohol at the time of the accident when his vehicle left the roadway and struck various objects before coming to rest. This conclusion is consistent with the trial court's assessment of the facts warranting the admission of the blood-alcohol test results, along with other evidence of intoxication; to-wit;

In the instant case, ... [t]he evidence included: a blood alcohol test taken within an hour of Mr. Crosby's accident which showed a result of .101%, expert testimony that a driver with a blood alcohol level of .101% is substantially impaired in his driving capabilities, the testimony of the officer who had arrived at the scene of the accident and detected the odor of alcohol on Mr. Crosby's breath, and the evidence that the plaintiff, familiar with the road on which he was driving, drove off the road and one hundred feet in a direct line into a tree. Taken in its totality, this evidence revealed far more than a "mere hint of intoxi-

cation" and certainly justified the submission to the jury of the evidence of plaintiff's intoxication and blood alcohol test results.

(Trial Court Opinion at 4)

To remove from the jury the evidence of intoxication would be rewarding those who test positive for intoxication but the fortuity of the situation (no other evidence to corroborate the same) precludes additional facts to buttress the occurrence of an accident attributable, at least in part, to the intoxicant. We are not of a mind to do so here in light of the presence of an odor of alcohol and the blood-alcohol level indicating a presumption of intoxication (*see* 75 Pa.C.S. § 3731(a)(4)), interpreted by an expert as to its deleterious effects and the occurrence of the accident itself, which the appellant could refute with his testimony of his clarity of mind and adroit behavior in reacting to an allegedly "phantom" on-coming vehicle necessitating his swerving from the paved portion of the road into someone's yard. *See Beneshunas v. Independence Life and Accident Insurance Co.*, 354 Pa.Super. 391, 512 A.2d 6 (1986).

It would be for the jury to assess the plaintiff's version against the physical facts evidencing intoxication and the accompanying accident. Because the trial court's ruling is consistent with our thinking on the matter, we affirm it this day.

As for the other issues raised by the plaintiff, it is to be noted that we have scrutinized them and find them to be meritless.[3] Accordingly, we have no reservations in upholding the actions of the court below.

Order affirmed.

ROWLEY, J., notes his dissent.

**3.** The other issues raised by the plaintiff appear at page 3 of his brief under the caption "Statement of Questions Involved" and read:

B. Did the Court of Common Pleas err as a matter of law in prohibiting Plaintiff/Appellant from introducing evidence of prior collisions at the site of Plaintiff's collision?

C. Did the Court of Common Pleas err as a matter of law in permitting Defendant's/Appellee's engineering expert to testify as

an expert concerning the effects of alcohol consumption on the Plaintiff's/Appellant's ability to operate his automobile?

D. Did the Court of Common Pleas err as a matter of law in finding that its rulings on evidence were not harmful nor extremely prejudicial to Plaintiff's/Appellant's case?

E. Did the Court of Common Pleas err as a matter of law in denying Plaintiff's/Appellant's Petition for Leave to Amend Post–Trial Motions?