J-A30038-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.S.M. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| E.M.S. | : | |
| | : | |
| Appellee | : | No. 1151 MDA 2016 |

Appeal from the Order Entered June 10, 2016
in the Court of Common Pleas of York County
Civil Division at No: 2016-FC-366-23

BEFORE: BOWES, OLSON, and STABILE, JJ.

MEMORANDUM BY STABILE, J.: **FILED FEBRUARY 24, 2017**

A.S.M. ("Father") appeals from the order entered June 10, 2016, in the Court of Common Pleas of York County, which denied his complaint to disestablish paternity and for genetic testing with respect to his minor male child, B.P.M. ("Child"), born in September 2007. After careful review, we affirm.

We summarize the relevant factual and procedural history of this matter as follows. Father and Mother were never married, but dated from approximately 2006 to 2008. N.T., 6/9/16, at 5-6, 13, 32. Father executed an acknowledgment of paternity form at or near the time of Child's birth, and became Child's legal father. *Id.* at 20, 35, 55. The record does not reveal that Father made any effort to rescind the acknowledgment of paternity, or to challenge his paternity of Child in any way, until Mother filed

for child support in 2010. ***Id.*** at 19; Defendant's Exhibit 2 ("Summary of Trier of Fact" prepared by support conference officer) at 2. According to the parties' child support order, dated April 5, 2010, Father and Mother "agree[d] to private paternity testing at the expense of [Father]." Defendant's Exhibit 1 (child support order) at 3. However, the record does not indicate that a paternity test was ever conducted.

On March 1, 2016, Father filed a complaint to disestablish paternity and for genetic testing. Father attached to his complaint a copy of what he averred was a paternity test indicating that another man, R.F., is the biological father of Child. The trial court conducted a hearing on June 9, 2016. Following the hearing, on June 10, 2016, the court entered an order denying Father's complaint. Father filed a motion for additional testimony on June 10, 2016, which the court denied by order entered June 14, 2016. Father timely filed a notice of appeal on July 8, 2016, along with a concise statement of errors complained of on appeal. Then, on July 21, 2016, Father filed a motion to vacate order and second motion for additional testimony. The court denied this motion on August 1, 2016. Father did not file a notice of appeal from the order denying this latter motion.

Father raises three issues for our review, which we have reordered for ease of disposition.

> [I.] Whether the [trial] court erred as a matter of law when it failed to apply the standard to challenge an acknowledgement of paternity as set forth in 23 Pa.C.S.[A.] § 5103, providing that an

acknowledgement may only be challenged on the basis of fraud, duress or material mistake of fact?

[II.] Whether the [trial] court abused its discretion or committed an error of law in its decision dated June 10, 2016, denying [Father's] request for a Paternity Test, in that a previous order entered by the York County Court of Common Pleas in the Domestic Relations matter, regarding the same parties and the same subject minor child, allowed for [Father] to obtain the Paternity Test at his cost, with which [Mother] failed to comply?

III. Whether the [trial] court erred as a matter of law and abused its discretion in denying [Father's] Motion for Additional Testimony as well as [Father's] Motion to Vacate Order and Second Motion for Additional Testimony?

Father's Brief at 7 (suggested answers omitted).

We consider Father's claims mindful of our well-settled standard of review.

[W]e review the trial court's order for an abuse of discretion or error of law. Abuse of discretion exists where the trial court overrides or misapplies the law, or if there is insufficient evidence to sustain its order. We will not disturb the trial court's findings if they are supported by competent evidence, and may not reverse simply because we might have made a different finding.

*R.W.E. v. A.B.K.*, 961 A.2d 161, 165-66 (Pa. Super. 2008) (citations omitted).

Pursuant to 23 Pa.C.S.A. § 5103(a), the father of a child born out of wedlock may file an acknowledgement of paternity form with the

Pennsylvania Department of Human Services.[1]   If the child's mother consents to the acknowledgment of paternity, Section 5103(a) provides that "the father shall have all the rights and duties as to the child which he would have had if he had been married to the mother at the time of the birth of the child[.]"  23 Pa.C.S.A. § 5103(a).  "Notwithstanding any other provision of law, an acknowledgment of paternity shall constitute conclusive evidence of paternity without further judicial ratification in any action to establish support."  23 Pa.C.S.A. § 5103(d).

Section 5103(g) provides that an acknowledgement of paternity may only be rescinded under certain limited circumstances.

**(g) Rescission.—**

(1) Notwithstanding any other provision of law, a signed, voluntary, witnessed acknowledgment of paternity subject to 18 Pa.C.S. § 4904 shall be considered a legal finding of paternity, subject to the right of any signatory to rescind the acknowledgment within the earlier of the following:

(i) sixty days; or

(ii) the date of an administrative or judicial proceeding relating to the child, including, but not limited to, a domestic relations section conference or a proceeding to establish a support order in which the signatory is a party.

_____

[1] Section 5103(a) refers to the "Department of Public Welfare," which was renamed the "Department of Human Services" effective November 24, 2014. **See** 62 P.S. § 103.

(2) After the expiration of the 60 days, an acknowledgment of paternity may be challenged in court **only on the basis of fraud, duress or material mistake of fact**, which must be established by the challenger through clear and convincing evidence. An order for support shall not be suspended during the period of challenge except for good cause shown.

23 Pa.C.S.A. § 5103(g) (emphasis added).

For the purposes of rescinding an acknowledgment of paternity, fraud consists of the following elements. "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result." *R.W.E.*, 961 A.2d at 167 (quoting *B.O. v. C.O.*, 590 A.2d 313, 315 (Pa. Super. 1991)).

A misrepresentation need not be an actual statement; it can be manifest in the form of silence or failure to disclose relevant information when good faith requires disclosure. Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact **or by silence when good faith required expression.** Fraud comprises anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture.

*Id.* at 167-68 (quoting *Glover v. Severino*, 946 A.2d 710, 713 (Pa. Super. 2008)) (emphasis in original).

In his first issue, Father argues that the trial court erred by failing to apply the standard set forth at Section 5103(g). Father's Brief at 12, 16-20. Father argues that Mother engaged in fraud by omission by failing to notify

him that he may not be Child's biological father, and that he was operating under a material mistake of fact, in that he believed that he was Child's biological father. *Id.* at 18-19. Father contends that the court would have granted his complaint to disestablish paternity if it had applied Section 5103(g) correctly. *Id.* at 19.

In its opinion accompanying the order on appeal, the trial court considered whether Father executed the acknowledgement of paternity as a result of "fraud, coercion, or mutual [*sic*] mistake of fact." Trial Court Opinion, 6/10/2016, at 4. The court concluded that none of these was present, as Father knew that he may not be Child's biological father when the acknowledgment was signed. *Id.* Specifically, the court found that Mother and Father discussed the possibility that Father may not be Child's biological father at the time Child was born, and "the fact that the issue of paternity came up at all shortly after the birth of [Child] would be an indicator that [Father] had some sincere doubts as to the paternity of the child[.]" *Id.* at 4-5. The court also noted that Father raised the issue of paternity during the 2010 support conference, which "would be yet another indicator of [Father's] doubts as to paternity." *Id.* at 5.

After carefully examining the record in this matter, we conclude that the trial court did not abuse its discretion. Father testified during the June 9, 2016 hearing that he had no idea that he might not be Child's biological father prior to Child's birth. N.T., 6/9/16, at 6. Curiously, however, Father reported that the subject of paternity came up almost immediately after

Child was born. Father recalled, "[Mother] had clearly stated to me during the birth of the child that when the nurse had brought out the paperwork, if I did not sign the paperwork, and if I requested paternity testing, that she would leave with the child and take me to Court at that time for support." *Id.* at 6. Father further testified, "I remember it. Clearly it was stated to me. If I do not sign acknowledgment of paternity, she will take the child -- my child is what she said, and leave and take me to Court at that time." *Id.* at 18.

In addition, Mother testified that she did not know who Child's biological father was at the time he was born. *Id.* at 36. Mother stated, "I never said that [Father] was without a shadow of a doubt [Child's] father. He knew which is obviously why he has been questioning paternity since day one." *Id.* Mother reported that she and Father broke up for about three or four weeks around the time Child was conceived. *Id.* at 36, 39. According to Mother, Father knew that she had been dating R.F. during that time, as evidenced by a "confrontation" that took place between R.F. and Father. *Id.* at 40. Mother acknowledged that she could "not recall having a specific conversation" with Father regarding his paternity of Child. *Id.* at 37. However, Mother explained, "I think it came up in arguments. It was never a direct conversation regarding someone else being the father of the child. It was typically something that was thrown out in arguments." *Id.* at 41.

Accordingly, the record supports the finding of the trial court that Mother and Father discussed Father's paternity of Child at or near the time

Child was born, and that Father "had some sincere doubts" that he was Child's biological father. Trial Court Opinion, 6/10/2016, at 5. Indeed, Father's own testimony strongly supports this finding, as he testified discussing the possibility of a paternity test with Mother "during the birth of the child." N.T., 6/9/16, at 6. Given that Father was aware that he may not be Child's biological father at the time of Child's birth, Father has failed to prove that he executed the acknowledgment of paternity as a result of fraud, duress, or a material mistake of fact.

In his second issue, Father argues that the trial court erred or abused its discretion by failing to direct that he is entitled to a paternity test pursuant to the April 5, 2010 support order. Father's Brief at 11-12, 14-16. Father contends that the court failed to provide a valid reason for declining to enforce the 2010 order, and that by doing so the court risked "encourag[ing] the general public to ignore orders." *Id.* at 15. Father suggests that, "[a]s public policy, the Court should enforce all prior orders of court, absent any previous abuse of discretion or invalid orders." *Id.* at 16.

The trial court only briefly addressed this claim in its opinion pursuant to Pa.R.A.P. 1925(a). The court explained, "While [Father] testified that he asked for paternity testing at some point in 2010, testimony indicated that he did not pursue testing." Trial Court Opinion, 7/25/2016, at 2.

Initially, we note that Father's claim is underdeveloped. Father does not direct our attention to any authority indicating that the trial court was obligated to order a paternity test pursuant to the 2010 order. Father

- 8 -

merely cites case law providing that courts have the ability to enforce their own orders. *See id.* at 14 (citing **Davin v. Davin**, 842 A.2d 469, 472 (Pa. Super. 2004); **Lindsey v. Lindsey**, 492 A.2d 396, 398 (Pa. Super. 1985)). Thus, Father has waived this issue. **See In re W.H.**, 25 A.3d 330, 339 n.3 (Pa. Super. 2011), *appeal denied*, 24 A.3d 364 (Pa. 2011) (quoting **In re A.C.**, 991 A.2d 884, 897 (Pa. Super. 2010)) ("'[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived.'").

Moreover, even addressing Father's claim on the merits, he still is not entitled to relief. As explained above, Section 5103(g) provides that Father may **only** rescind the acknowledgment of paternity by proving fraud, duress, or a material mistake of fact by clear and convincing evidence. 23 Pa.C.S.A. § 5103(g). Even if Father were to obtain a paternity test showing that he is not Child's biological father, such a test would fail to satisfy the requirements of Section 5103(g), and Father would remain Child's legal father. **Cf. Lynn v. Powell**, 809 A.2d 927, 929-30 (Pa. Super. 2002) (citing **McConnell v. Berkheimer**, 781 A.2d 206, 210 (Pa. Super. 2001)) (explaining in the context of paternity by estoppel that "the law does not allow a person to challenge his role as a parent once he has accepted it, even with contrary DNA and blood tests").

Finally, in his third issue, Father argues that the trial court erred and abused its discretion by denying Father's motion for additional testimony, as

well as Father's motion to vacate order and second motion for additional testimony. Father's Brief at 12-13, 21-25.

> [T]he general rule is that a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, but such matters are peculiarly within the sound discretion of the trial court . . . . Such a ruling will be disturbed only if the court has abused its discretion. However, a case should ordinarily be reopened where it is desirable that further testimony be taken in the interest of a more accurate adjudication and where an honest purpose would be justly served without unfair disadvantage.

*Beaumont v. ETL Services, Inc.*, 761 A.2d 166, 168 (Pa. Super. 2000) (quoting *Beneshunas v. Independence Life & Accident Insurance Co.*, 512 A.2d 6, 9 (Pa. Super. 1986)) (citations and quotation marks omitted) (emphasis omitted).

Here, Father explains that he intended to call Mother's ex-husband, M.D., as a witness during the hearing on June 9, 2016. *Id.* at 21. However, Father contends that Mother prevented him from calling M.D. by "orchestrat[ing] a series of events" which caused M.D. to be incarcerated due to an alleged parole violation the evening prior to the hearing. *Id.* at 21-23. Father insists that M.D. would have testified that Mother "made statements to him that she had intentionally misled [Father] into believing that he was the father of the child," and that this testimony would help demonstrate that Mother perpetrated a fraud upon Father. *Id.* at 23.

In its orders denying Father's motions for additional testimony, the trial court explained that it denied Father's complaint to disestablish

- 10 -

paternity based on "conversations that took place" between Mother and Father, and that any additional testimony presented by M.D. would not have changed the result in this case. Order, 6/14/16, at 1; *see also* Order, 8/1/16, at 2.

With respect to Father's first motion for additional testimony, we observe that Father did not allege in that motion that Mother was responsible for preventing M.D. from testifying, nor did Father explain why he believed that M.D.'s testimony would change the trial court's findings in this case. Instead, Father indicated merely that M.D. is a "key witness," and that he was unable to testify due to being recently incarcerated. Motion for Additional Testimony, 6/10/2016, at ¶ 3-7. We discern no abuse of discretion by the court in denying this motion given Father's failure to articulate any clear reason to reopen the record. Further, as discussed above, Father's own testimony strongly supports the finding of the trial court that Father had sincere doubts as to his paternity of Child at the time Child was born. It was within the court's discretion to conclude that any additional testimony presented by M.D. would not have caused it to reach a different result.

With respect to Father's motion to vacate order and second motion for additional testimony, this motion was not filed until July 21, 2016, long after Father filed his notice of appeal on July 8, 2016, and the thirty-day appeal period expired on July 11, 2016. Our review of the record does not indicate

that Father filed a notice of appeal from the order denying this latter motion. Thus, that order is not presently before this Court.

Based on the foregoing, we conclude that the trial court did not abuse its discretion by denying Father's complaint to disestablish paternity and for genetic testing. Accordingly, we affirm the order of the trial court.

Order affirmed.

Judge Olson joins this memorandum.

Judge Bowes files a concurring memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2017