J-S01041-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: J.A.B., A MINOR J.M.R., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: S.D., MOTHER | : | No. 1341 MDA 2018 |

Appeal from the Decree Entered July 24, 2018
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 2018-00842, 2018-00843

BEFORE: PANELLA, P.J., MURRAY, J., and PELLEGRINI, J.*

MEMORANDUM BY PELLEGRINI, J.: **FILED MARCH 19, 2019**

S.D. (Mother) appeals from a decree of the Court of Common Pleas of Lancaster County Orphans' Court granting the Lancaster County Children and Youth Social Service Agency's (CYS) petition to terminate Mother's parental rights to her sons, J.A.B. and J.M.R. (Children).[1] For the reasons below, we vacate the decree and remand for a new hearing.

Preliminarily, we address our jurisdiction. In **Commonwealth v. Walker**, 185 A.3d 969, 971 (Pa. 2018), our Supreme Court held that "where a single order resolves the issues arising on more than one docket, separate

---

[1] The proceedings involved four children: the two at issue here, plus two others not at issue in this appeal. As will be discussed below, the orphans' court had scheduled dependency review hearings for the other children in addition to these termination proceedings.

* Retired Senior Judge assigned to the Superior Court.

notices of appeal must be filed for each case." Here, Mother filed one notice of appeal listing the two lower court docket numbers – one for each child – in violation of **Walker**. This Court held in **Matter of M.P.**, 2019 PA Super 55 (Pa. Super. Feb. 22, 2019), that **Walker** applies in all types of cases, "and shall be applied prospectively and uniformly by this Court." **Id**. The appellant in **M.P.** failed to comply with **Walker**, which "compels quashal." **Id**. (footnote omitted).

Notwithstanding, we decline to quash because the orphans' court entered a single decree of termination for both children listing both docket numbers.[2] Continuing to treat this as one matter, the Notice of Appeal Rights contained in the Decree provides:

> YOU HAVE THE RIGHT TO APPEAL THIS DECREE TO THE SUPERIOR COURT OF PENNSYLVANIA. YOUR APPEAL MUST BE FILED WITHIN THIRTY (30) DAYS OF THIS DECREE FILING WITH THE CLERK OF THE ORPHANS' COURT. YOU MAY LOSE THE RIGHT TO APPEAL UNLESS YOU FILE YOUR APPEAL ON TIME AND IN CONFORMANCE WITH THE APPLICABLE PENNSYLVANIA RULES OF APPELLATE PROCEDURE.

Decree, 7/24/18, at 3.

As can be seen, the orphans' court's notice misled Mother that she only had to take one appeal from its decree that was captioned with two docket numbers. In this situation, where the orphans' court misinformed

---

[2] **M.P.** addressed in the alternative the merits. As we decline to apply **Walker** on other grounds, we need not decide whether **M.P.** itself applies only to notices of appeal filed on or after its publication date of February 22, 2019.

Mother that only one appeal needed be taken, *Walker* does not and was not meant to apply. We therefore proceed to the merits.

## I.

CYS filed a petition to terminate Mother's parental rights to the Children. Mother appeared at the initial termination hearing on May 14, 2018, but the matter was postponed due to inadequate notice to the legal father. The termination hearing was rescheduled for July 16, 2018, at 8:30 a.m. A dependency hearing concerning her other children was scheduled for 1:30 p.m. that same day.

On the date of the termination and dependency hearings, the orphans' court called the case at 10:30 a.m., but Mother was not present. Despite her appearance at the previous hearing and stated desire to contest the termination of rights to the Children, the transcript does not indicate that any meaningful attempt was made to determine her whereabouts prior to the judge permitting Mother's counsel to withdraw. Mother's former counsel remained present at the morning termination hearing, but did not speak or otherwise take any steps to represent her interests.[3]

---

[3] The Adoption Act grants parents a right to counsel in involuntary termination proceedings. *See* 23 Pa.C.S. § 2313(a.1). Permitting counsel to withdraw in this case violated this requirement and arguably constituted a structural error which affected the entire termination hearing. A structural error is an error "that affects the framework within which the trial proceeds, rather than simply an error in the trial process itself. Structural errors are not subject to harmless error analysis." *In re Adoption of L.B.M.*, 161 A.3d 172, 183 (Pa. 2017) (OAJC). "Generally, denial of counsel is a
(Continued on next page)

- 3 -

The termination hearing commenced without Mother in attendance or her interests being represented by counsel. The only witness was a CYS supervisor, who testified about the mental and physical development of the Children as well as Mother's progress in eliminating the circumstances which required their placement in CYS's care. The orphans' court entered a decree at 11:16 a.m. terminating Mother's parental rights. The court then addressed the matters concerning Mother's other two children who are not at issue in this appeal, and separate orders were entered regarding their status.[4]

---

structural error." **Id.** However, Mother has not raised this issue in her appeal. The question is thus whether we can raise the issue *sua sponte*.

In **In re X.J.**, we reviewed a petition to withdraw under **Anders v. California**, 386 U.S. 738 (1967), and we raised the same representation issue as structural error via an independent review of the record. In **In re K.J.H.**, 180 A.3d 411 (Pa. Super. 2018), we extended the rationale outside the **Anders** context to hold that where an orphans' court failed to appoint counsel to represent a child's interests, we could raise that issue *sua sponte*. We reasoned that the analysis in **In re X.J.** naturally extended to such a failure. However, Judge Judith Olson dissented, noting that **Anders** requires independent examination of the record, and that without such a requirement, an appellate court cannot address an issue unless the parties raise it. Moreover, Judge Olson noted that the presence of a structural error simply means that harmless error analysis does not apply; the aggrieved party must still preserve an issue to raise it on appeal. Because of the way we have resolved the present appeal, we need not address whether we may *sua sponte* raise a structural error based on Mother's lack of representation.

[4] Those children were not discussed during the morning session and their dockets do not appear on the transcript's cover sheet. A separate hearing was presumably held.

Mother appeared later that same day. At 5:01 p.m., a hearing was held where CYS requested that the orphans' court vacate its orders concerning the two children not at issue in this appeal. CYS conceded that the hearings for those children were, in fact, scheduled for the afternoon:

> [Mother] is now present before the [c]ourt this afternoon, Your Honor. She has indicated that she was – she – her notice for the dependency review hearing indicated that the hearings were scheduled for the afternoon, and, in fact, **in looking at the record, that is accurate.**
>
> We are requesting that this [c]ourt vacate its previous orders and continue those matters with status reviews in order for those to be rescheduled before the [c]ourt.
>
> There were also termination of parental rights hearings which were scheduled for this morning regarding [the Children]. . . . [CYS] is of the position at this time, since the decree has been issued, the only appropriate measure is for [Mother] to take an appeal to the Superior Court[.]

N.T., 7/16/18 (p.m.), at 3-5 (emphasis added).

The orphans' court agreed. "I would tend to agree with [CYS] though in respect to the termination cases . . . there was appropriate notice given[.]" *Id*. at 6. Mother's former counsel was then informally reappointed to represent Mother. Counsel called Mother, who told the court that she believed all the hearings involving her four children were scheduled for the afternoon. She stated that it was inconceivable that she would appear for a status review for two children but opt not to appear for the instant termination hearing.

CYS did not dispute that Mother's absence was inadvertent – "Well, I'm not saying, ma'am, that you intentionally didn't come[.]" *Id*. at 10. CYS only maintained that Mother received written notice at the conclusion of the initial hearing in May and was personally served following that hearing.[5]

The judge credited CYS's testimony and the affidavit stating that Mother had been personally served with notice of the termination hearing and would not reopen the hearing for Mother's evidence. This appeal followed.

On appeal, Mother now asks this Court to vacate the termination decree and permit the reception of "testimony and evidence on behalf of Mother." Mother's brief at 19. She argues that she is entitled to this relief because CYS failed to give her adequate notice of the termination hearing. Mother also claims that the orphans' court abused its discretion when it denied her a chance to testify on her own behalf at the afternoon hearing.

## II.

Mother contends that her due process rights were violated because she did not receive notice of the morning hearing. "Formal notice and an

---

[5] Remarkably, CYS alluded to the effort expended in the morning proceeding as a basis for not disturbing the termination decree. Assuming that a parent's justifiable failure to appear must be balanced against some type of prejudice to CYS, we note that the proceeding took 45 minutes. Furthermore, the hearing was not adversarial as Mother had no representation. Finally, it is obvious on its face that less than an hour's worth of time pales in comparison to Mother's permanent loss of parental rights.

opportunity to be heard are fundamental components of due process when a person may be deprived in a legal proceeding of a liberty interest, such as physical freedom, or a parent's custody of her child." ***J.M. v. K.W.***, 164 A.3d 1260, 1268 (Pa. Super. 2017) (*en banc*) (quoting ***Everett v. Parker***, 889 A.2d 578, 580 (Pa. Super. 2005)). Termination of parental rights is a drastic measure that should not be taken lightly. Not only are [Mother's] rights at stake here, but [the Children's] right to a relationship[.]" ***In re Adoption of K.G.M.***, 845 A.2d 861, 864 (Pa. Super. 2004) (citation omitted).

Adequate notice satisfies due process. The Adoption Act provides that a failure to appear following good service of notice is grounds to proceed with the hearing. ***See*** 23 Pa.C.S. § 2513(b). CYS bears the burden to prove proper service. ***See In re Interest of K.B.***, 763 A.2d 436, 439 (Pa. Super. 2000). To prove that Mother received proper notice, CYS presented an affidavit indicating that service was made.

In her brief, Mother does not discuss the affidavit or the court's credibility determinations. Instead, she submits that the notice was legally defective because, as she testified, "The only paperwork I received is what I brought today and that was to be here at 1:30." N.T., 7/16/18 (p.m.), at 8.[6] Mother argues that CYS gave notice of the hearing regarding her other children, but not the termination hearing. "Mother does not contend that

---

[6] This document was not marked as an exhibit and the record does not indicate whether CYS and/or the orphans' court examined the paperwork.

- 7 -

[CYS] deliberately failed to give her notice. However, she contends that [CYS] is mistaken that they provided notice[.]" Mother's brief at 17.

The orphans' court found otherwise based on substantial evidence. CYS entered a notarized affidavit indicating that personal service was made upon Mother informing her of the hearing, along with a copy of the petition to terminate parental rights. The certified record includes the petition, which clearly indicates that the termination hearing would take place at 8:30 a.m. These materials were sufficient for the trial court to make its determination that Mother received notice of the termination hearing. *See In re Interest of K.B.*, 763 A.2d 436, 440 (Pa. Super. 2000) (two affidavits stating personal service was made supported finding that parent received notice). While Mother may have testified to the contrary, we are bound by the orphans' court's credibility determination on that point.

## III.

Mother next contends that the orphans' court abused its discretion by not permitting her to offer evidence why her parental rights should not be terminated. She contends that her appearance in the afternoon for the proceedings regarding her other children – which were not termination proceedings – supported Mother's testimony that she mistakenly believed that all matters concerning her children were scheduled for the afternoon. On this point, we agree with Mother and vacate the subject decree on that basis.

"The general rule is that 'a court may, in its discretion, reopen the case after a party has closed for the taking of additional testimony, but such matters are peculiarly within the sound discretion of the trial court[.]'" *In re J.E.F.,* 409 A.2d 1165, 1166 (Pa. 1979) (quoting *Commonwealth v. Deitch Co.*, 295 A.2d 834 (Pa. 1972)). "This Court has previously found it proper to reopen a case to allow the introduction of additional evidence where the evidence has been omitted by accident, inadvertence, or even because of mistake as to its necessity[.]" *Id*. at 1166. The refusal to reopen a case for additional testimony may constitute an abuse of discretion if the testimony is critical to a fair and accurate ruling. *See Beneshunas v. Indep. Life & Acc. Ins. Co.*, 512 A.2d 6, 10 (Pa. Super. 1986) ("[T]he significance of the witness' testimony and the contribution which it would have made to an accurate adjudication suggest most strongly that the trial court should have heard it.").

What exactly was scheduled, and at what times, seems to have been a source of confusion for all parties in this case. In fact, the orphan's court and CYS proceeded on the other children's petition in the morning rather than in the afternoon when they were scheduled. Both the court and CYS realized at the afternoon setting that the error required those dependency orders to be vacated. Importantly, the orphans' court also appreciated that Mother could have been similarly confused about the scheduling of the proceedings: "And, [Mother], I'm sure you could understand that very often people in your position perhaps don't understand the dual aspect of the

hearing in that reviews . . . occur basically simultaneously, one after the other." N.T., 7/16/18 (p.m.), at 12. Even CYS seemed to indicate that it would have consented to a motion to vacate the orders at issue here except for its mistaken belief that the orphans' court had no jurisdiction to do so. *Id*. at 5.

Additionally, there is no allegation that Mother's failure to appear was part of a pattern of improper behavior. She had appeared in all prior proceedings, as well as the afternoon dependency hearing held on the date of the termination proceedings. Both the orphans' court and CYS demonstrated their own confusion about what was scheduled on that date.

Given all that, the orphans' court abused its discretion by refusing to permit Mother to testify in opposition to parental termination once it became clear that her failure to appear at the morning hearing was an honest mistake. Mother's significant parental interests, as well as her understandable absence, should have entitled her to dispute CYS's petition for termination when she appeared at the afternoon hearing. To remedy that error, we vacate the decree terminating parental rights as to the Children and remand for an evidentiary hearing.

Decree vacated. Case remanded for proceedings consistent with this memorandum. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 03/19/2019