J-A13027-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| DANA BORSARI, ADMINISTRATRIX OF THE ESTATE OF DAVID BORSARI, DECEASED | : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | : : : : | |
| v. | : : | |
| | : | No. 1361 WDA 2024 |
| LATROBE AREA HOSPITAL, INC. T/B/D/A EXCELA HEALTH; LATROBE HOSPITAL; EXCELA HEALTH PHYSICIAN PRACTICES, INC. T/B/D/A EXCELA HEALTH MEDICAL GROUP, MARK A. MICHAK, M.D. | : : : : : : : | |

Appeal from the Judgment Entered December 3, 2024
In the Court of Common Pleas of Westmoreland County Civil Division at
No(s):  No. 115 of 2023

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY OLSON, J.:  **FILED: JANUARY 23, 2026**

Appellant, Dana Borsari, Administratrix of the Estate of David Borsari (Borsari), appeals from the judgment entered on December 3, 2024, following the conclusion of a civil jury trial.  The December 3, 2024 judgment reflected a jury verdict that exonerated trial defendants Latrobe Area Hospital, Inc. t/b/d/a Excela Health; Latrobe Hospital; Excela Health Physician Practices, Inc. t/b/d/a Excela Health Medical Group, and Mark A. Michak, M.D.

(collectively, Appellees), after finding that Dr. Michak was not negligent and had not breached the standard of care.[1]   We affirm.

The trial court summarized the facts and procedural history of this case as follows:

> [Appellant] filed a complaint in medical malpractice against [Appellees] regarding the medical care provided to [] Borsari on March 26, 2019.  On that date, [] Borsari reported to the emergency room complaining of chest pains radiating into his left arm.  The attending physician referred him for an echocardiogram (or EKG), and Dr. Milchak was the cardiologist on duty at the time.  After he reviewed the EKG, Dr. Milchak reported that the results were normal and recommended a medication.  According to [Appellant] and [the] expert testimony [she presented], Dr. Milchak fell below the standard of care because he ignored Borsari's health and family history and the abnormalities in the EKG, and did not recommend a heart catheterization.  As a result of Dr. Milchak's [alleged] breach of the standard of care, Borsari (hereinafter referred to as "Decedent") died on his way to work

---

[1]  While Appellant purports to appeal from the October 7, 2024 order denying post-sentence motions, the appeal properly lies from the entry of judgment on December 3, 2024.  In this case, the jury returned a verdict in favor of Appellees on July 5, 2024.  On July 15, 2024, Appellant filed a motion for post-trial relief.  On October 7, 2024, the trial court entered an order denying Appellant relief.  Appellant filed a notice of appeal on November 4, 2024.  On November 8, 2024, the trial court directed Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b).  Appellant complied timely.  On December 3, 2024, Appellant filed a *praecipe* to enter judgment on the record.  On the same day, the Prothonotary sent the parties notice of the entry of judgment.  Technically, an "[a]ppeal lies from the judgment entered and not the denial of post-trial motions," ***Crosby v. Dep't of Transp.***, 548 A.2d 281, 283 (Pa. Super. 1988), and a "verdict [does] not become final for purposes of appeal until properly reduced to and entered as a formal judgment under [Pennsylvania Rule of Civil Procedure] 227.4." ***Crystal Lake Camps v. Alford***, 923 A.2d 482, 488 (Pa. Super. 2007).  As such, we have changed the caption accordingly.  Finally, we note that the trial court subsequently issued an opinion pursuant to Pa.R.A.P. 1925(a) on December 27, 2024.

on April 5, 2019. The autopsy showed that Decedent had coronary artery disease. According to [Appellees] and their expert testimony, Dr. Milchak did not breach the standard of care because he accurately interpreted Decedent's test results and his role did not extend any further since the Decedent was not his patient for any additional purpose.

A jury trial was held on July 1, 2024 through July 5, 2024. At the conclusion of the testimony, the jury returned a verdict in favor of [Appellees], finding that Dr. Milchak did not breach the standard of care. [Appellant] filed a timely post-trial motion arguing four errors committed by [the trial court] in its evidentiary rulings. [The trial] court denied [Appellant's] post-trial motion on all four matters by order of court dated October 7, 2024.

Trial Court Opinion, 12/27/2024, at 1-2 (unnecessary capitalization omitted).

As set forth above, this timely appeal resulted.

On appeal, Appellant presents the following issues for our review:

A. Did the trial court err as a matter of law and/or abuse its discretion when it sustained [Appellees'] objection to [Appellant's] cardiology expert, Stuart Zarich, M.D., testifying regarding Decedent's Troponin levels (cardiac enzymes) when [the testimony was reflected] within the fair scope of his report[?]

B. Did the trial court err as a matter of law and/or abuse its discretion when it granted [Appellees'] motion *in limine* to preclude the testimony of Nurse Katherine Goldberg regarding her observations of the relevant stress [EKG] strips[?]

C. Did the trial court err as a matter of law and/or abuse its discretion when it sustained [Appellees'] objection to impeachment testimony of Jeffrey Garrett, M.D. regarding the ***Winschel v. Jain***[2] opinion [and] which went directly to Dr. Garrett's credibility[?]

_____

[2] ***Winschel v. Jain***, 925 A.2d 782 (Pa. Super. 2007). As discussed more fully below, ***Winschel*** involved a prior medical malpractice case in which Dr. Garrett's expert testimony was excluded from the trial record.

Appellant's Brief at 7 (unnecessary capitalization omitted).

Appellant claims, initially, that a new trial is warranted because the trial court erred or abused its discretion in ruling on three evidentiary matters. As such, we employ the following appellate standard of review:

> Our standard of review when faced with an appeal from the trial court's denial of a motion for a new trial is whether the trial court clearly and palpably committed an error of law that controlled the outcome of the case or constituted an abuse of discretion. In examining the evidence in the light most favorable to the verdict winner, to reverse the trial court, we must conclude that the verdict would change if another trial were granted. Further, if the basis of the request for a new trial is the trial court's rulings on evidence, then such rulings must be shown to have been not only erroneous but also harmful to the complaining parties. Evidentiary rulings which did not affect the verdict will not provide a basis for disturbing the jury's judgment....
>
> Moreover, the admission or exclusion of evidence is within the sound discretion of the trial court. In reviewing a challenge to the admissibility of evidence, we will only reverse a ruling by the trial court upon a showing that it abused its discretion or committed an error of law.

*Heffelfinger v. Shen*, -- A.3d --, 2025 WL 2025580 (Pa. Super. 2025), *citing*

*Blumer v. Ford Motor Co.*, 20 A.3d 1222, 1226 (Pa. Super. 2011).

> Furthermore,
>
> [a]n abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> In addition, to constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party.

- 4 -

*E. Steel Constructors, Inc. v. Int'l Fid. Ins. Co.*, 282 A.3d 827, 844 (Pa. Super. 2022) (citation omitted).

Moreover, regarding the grant or denial of a motion *in limine*, we have stated:

> A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury. A trial court's decision to grant or deny a motion *in limine* is subject to an evidentiary abuse of discretion standard of review.

*Id.* (citation omitted).

First, Appellant argues that the trial court erred by limiting the trial testimony of her proffered expert witness, cardiologist Dr. Stuart Zarich. *See* Appellant's Brief at 17-28. Appellant contends that the trial court abused its discretion or erred as a matter of law when it sustained Appellees' objection to trial testimony offered by Dr. Zarich pertaining to "Decedent's troponin (cardiac enzyme)" levels, [3] because the trial court determined such testimony

---

3 More specifically, according to Appellant:

> Cardiac enzymes are proteins that are released into the bloodstream when the heart is damaged or stressed. When the heart muscle is damaged, troponin levels in the blood will increase. Troponin levels usually start to rise within hours of heart damage. A rise and fall in cardiac enzymes (Troponin levels) in a blood sample can indicate a heart attack or other heart injury/damage. Even a slight increase in troponin levels will often mean there has been damage to the heart. Any kind of damage to the heart muscle can potentially cause the release of this chemical into one's bloodstream.

*(Footnote Continued Next Page)*

was outside the fair scope of Dr. Zarich's expert report. *Id.* at 17. Appellant argues that Dr. Zarich specifically referenced troponin levels in his expert report when he stated: "[Decedent's] cardiac evaluation revealed a normal exam, no major EKG abnormalities, and **a slight elevation in troponin levels**." *Id.* at 19 (emphasis in brief), *citing* Dr. Zarich's report, at 2. The trial court precluded Dr. Zarich from testifying about troponin levels because he only mentioned "a slight elevation" in his written expert report without offering an opinion or an interpretation of the data; Appellant claims such a finding amounted to an error of law or abuse of discretion. *Id.* at 19-21. Appellant suggests that the trial court failed to determine whether Dr. Zarich's report provided Appellees with sufficient notice of his expert opinions and theories to prepare proper rebuttal and/or determine whether Appellees were surprised or prejudiced based upon alleged deviations between the expert report provided in discovery and the expert's proffered testimony at trial. *Id.* at 25. Appellant argues that "Dr. Zarich clearly included the elevated troponin levels in his report," referred to them as part of his review of the medical records, and identified them as factors upon which he relied in formulating his opinions. *Id.* at 26. Appellant also suggests that Appellees could not be "surprised that Dr. Zarich, a cardiologist, discussed troponin levels (cardiac

---

Troponin levels are often tested in a series of three tests because increased troponin levels usually do not show up for hours after heart damage has occurred.

Appellant's Brief at 17-18.

enzymes) in a cardiology case," particularly where cardiac enzymes were referenced in his expert report, as well as the reports of expert witnesses appearing for the defense. *Id.* at 27; *see also id.* at 26 ("Defense [e]xpert [c]ardiologist, Jeffrey S. Garrett, M.D., similarly discussed the elevated [t]roponins in his February 8, 2023 report."). Appellant argues that the trial court's error warrants a new trial. *Id.* at 28.

This Court has previously stated:

Under Pennsylvania Rule of Civil Procedure 4003.5, expert reports define the permissible scope of a party's expert trial testimony. Pa.R.Civ.P. 4003.5(c) ([The expert's] direct testimony at the trial may not be inconsistent with or go beyond the fair scope of his testimony in the discovery proceedings as set forth in his deposition, answer to an interrogatory, separate report, or supplement thereto).

In determining whether an expert's trial testimony falls within the fair scope of his pre-trial report, the trial court must determine whether the report provides sufficient notice of the expert's theory to enable the opposing party to prepare a rebuttal witness. In other words,

in deciding whether an expert's trial testimony is within the fair scope of his report, the accent is on the word "fair." The question to be answered is whether, under the particular facts and circumstances of the case, the discrepancy between the expert's pre-trial report and his trial testimony is of a nature which would prevent the adversary from making a meaningful response, or which would mislead the adversary as to the nature of the appropriate response.

*Garced v. United Cerebral Palsy of Philadelphia & Vicinity*, 307 A.3d 103, 131–132 (Pa. Super. 2023) (case citations, some quotations, and original brackets omitted), *appeal denied*, 327 A.3d 617 (Pa. 2024).

In this case, Dr. Zarich's expert report opined, in pertinent part:

6. Mr. Borsari was [a] 59 [year-old] diabetic, hypertensive with a history of hyperlipidemia, and family history of coronary disease, when he presented to the Excela ED on 3/26/2019 with a 45-minute episode of chest pain going into left arm at rest associated with nausea and "indigestion." His cardiac evaluation revealed a normal exam, no major ECG abnormalities and slight elevation in troponin levels. Given concerns for an acute coronary syndrome occurring at rest, he was appropriately observed overnight and a stress echo was performed the next day.

He was able to exercise [six] minutes and [one] second on a Bruce protocol and developed left arm pain in Stage II with frequent ventricular ectopy starting in Stage I with ventricular tachycardia in [S]tage II. He started to develop lateral ST depression in Stage II. At [the] end [of] exercise, he had clear inferolateral ST depression which actually became more prominent in recovery. Additionally, there was ST elevation in aVR which is a worrisome sign for extensive multi vessel coronary disease or left main disease. By [six] minutes into recovery when monitoring stopped, his ECG had continued to evolve.

His echocardiogram revealed mild inferolateral hypokinesis at rest with preserved left ventricular (LV) systolic function. At peak exercise there was a failure to augment his global LV function and global dilatation in the LV chamber size (which should get smaller with exercise). Taken together, [] Borsari developed symptoms, ECG changes which persisted into recovery associated with high grade ventricular ectopy and ventricular tachycardia along with echocardiographic finding which were all consistent with severe multivessel coronary artery disease. He was given low beta blocker therapy for his ectopy, but unfortunately suffered sudden cardiac death on 4/5/[20]19 with autopsy confirming severe left main and multivessel coronary artery disease.

7. It is my professional opinion that Dr. Michak was negligent in his interpretation of both [] Borsari's stress ECG and echocardiogram which contributed to his death. Proper identification of these stress abnormalities should have resulted in a timely evaluation with coronary arteriography, given his abrupt onset of unstable angina with clear evidence of multivessel disease on stress testing. The failure to perform subsequent coronary revascularization increased the risk of Mr. Borsari's sudden cardiac death.

Exhibit A, Plaintiff's Response to Request for Production of Expert Reports, 11/17/2022, at 2-3 (brackets added).

On Appellant's first issue, the trial court determined:

In the instant case, it is clear that [Appellees] would have been prejudiced by allowing Dr. Zarich to testify as to how the troponin levels were relevant to the case. A review of Dr. Zarich's November 1, 2022 report shows only one reference to troponin levels: "[Borsari's] cardiac evaluation revealed a normal exam, no major EKG abnormalities and a slight elevation in troponin levels." Dr. Zarich did not discuss the relevancy of the slight elevation in troponin levels and how or why the elevation related to Dr. Milchak's alleged breach of the standard of care or causation. Dr. Zarich did not opine that Dr. Milchak's failure to consider or take some action in relation to the slight elevation in troponin levels was negligent. As a result, Dr. Zarich's mere mention of the elevated [t]roponin levels was insufficient to place [Appellees] on notice that they had to provide a response regarding the relevancy of the elevated troponin levels. Therefore, pursuant to PA.R.C.P. 4003.5(c), the testimony [Appellant] sought to introduce was outside the fair scope of Dr. Zarich's report and [the trial c]ourt did not err or abuse its discretion in sustaining [Appellees'] objection and denying [Appellant's] request for post-trial relief on the issue.

Trial Court Opinion, 12/27/2024, at 4-5 (record citations omitted).

Based upon our standard of review, applicable law, and examination of the certified record, we agree that the trial court's exclusion of Dr. Zarich's trial testimony regarding troponin levels did not constitute an error of law or an abuse of discretion. Here, Dr. Zarich mentioned troponin levels in his report only once. He opined, in paragraph six of his report as set forth above, that Decedent's "cardiac evaluation revealed a normal exam, no major ECG abnormalities and **slight elevation in troponin levels**." Exhibit A, Plaintiff's Response to Request for Production of Expert Reports, 11/17/2022, at 2

(emphasis added). Dr. Zarich stated that the initial evaluation was normal, no major abnormalities were detected, and there was a slight elevation in troponin levels. However, the report does not speak to the diagnostic or clinical relevance of a slight elevation in troponin levels, causation, or how and why elevation related to Dr. Milchak's breach of the standard of care. Moreover, Decedent was admitted to the hospital overnight and an additional stress echocardiogram test was performed the following day. In paragraph seven of the above cited report, Dr. Zarich claims that "Dr. Milchak was negligent in his interpretation of both [Decedent's] stress ECG and echocardiogram," but does not specifically reference a failure to detect "the slight elevation in troponin levels." As such, we agree with the trial court that Dr. Zarich did not, in his pre-trial report, discuss the significance of a slight elevation in troponin levels or state how or why the elevation related to Dr. Milchak's alleged breach of the standard of care. Accordingly, under the particular facts and circumstances of this case, the trial court acted within its discretion in finding that the discrepancy between Dr. Zarich's pre-trial report and his proffered trial testimony prevented Appellees from formulating a meaningful response specifically related to troponin levels, even though Appellees' own expert briefly mentioned troponin levels in his own report.[4] Moreover, at trial, when confronted with a defense objection to Dr. Zarich's

_____

[4] It is unsurprising that passing references to troponin levels appear in the expert reports tendered by both sides in a medical malpractice litigation arising out of a fatal cardiac episode. Hence, mere casual references to troponin levels do not alter our conclusions.

- 10 -

troponin testimony as outside the fair scope of his report, counsel for Appellant acknowledged that Dr. Zarich's pre-trial report did not render an opinion on troponin levels. Instead, counsel argued that "[Dr. Zarich] can't get everything into the report." N.T., 7/2/2024, at 211-212. As such, Appellant essentially conceded at trial that Dr. Zarich's proffered testimony exceeded the scope of his initial report. For all of the foregoing reasons, we conclude that the trial court did not err or abuse its discretion in ruling on the admissibility of Dr. Zarich's trial testimony. Hence, Appellant's first appellate issue fails.

Next, Appellant argues that the trial court erred by not allowing Katherine Goldberg to testify at trial "regarding her observations of [Borsari's] relevant stress echocardiography [test] strips." Appellant's Brief at 28. Appellant points out that Goldberg was a registered nurse "with over 25 years of experience in cardiology" and was the person who "conducted [] Borsari's stress cardiogram." *Id.* Appellant concedes that Goldberg was called as a fact witness rather than an expert and that she had retired "two years before the deposition [in this matter and] indicated that she did not know if she would be able to interpret the [echocardiography] strips satisfactorily." *Id.* at 30. Appellant, however, asserts that "Goldberg was able to clearly point out certain 'obvious' findings" and should have been permitted to "testify[] in her scope as the cardiac nurse who conducted the stress echocardiogram." *Id.* at 30-31. Appellant posits that Goldberg's precluded testimony "was critical" to rebut defense expert evidence "that the majority of [Borsari's] stress echo

- 11 -

strips were completely normal." *Id.* at 37. Appellant claims instead that Goldberg's credibility "should have been left to the jury to determine." *Id.* at 37-38. Finally, Appellant argues that Pennsylvania Rule of Civil Procedure 4020(a)(5), permits previously recorded medical witness depositions, such as Goldberg's 2022 deposition at issue here, to "be used at trial for any purpose, whether or not the witness is available to testify." *Id.* at 38, *citing* Pa.R.C.P. 4020(a)(5) (use of depositions at trial). As such, Appellant argues that Goldberg should have been permitted to testify as a fact witness, either in person at trial or by video deposition. *Id.* at 39.

Pennsylvania Rule of Evidence 701 provides:

If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

Pa.R.E. 701.

Whereas, Pennsylvania Rule of Evidence 702, pertaining to expert witnesses, states:

If scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or education may testify thereto in the form of an opinion or otherwise.

Pa.R.E. 702.

This Court has previously determined that

- 12 -

whether testimony constitutes fact or opinion may be difficult, for there is no litmus test for fact versus opinion. Technical expertise does not *ipso facto* convert a fact witness, who might explain how data was gathered, into an expert witness, who renders an opinion based on the data.

***Deeds v. Univ. of Pennsylvania Med. Ctr.***, 110 A.3d 1009, 1017 (Pa. Super. 2015) (internal citations, quotations and brackets omitted). Moreover, this Court has found that a "treating [medical professional's] testimony is not subject to expert witness disclosure when the opinions or facts are developed in the normal course of medical treatment for a patient[,] are not developed in anticipation of litigation[, and the] knowledge was required [] to treat [] injury." ***Commonwealth v. Clark***, 311 A.3d 626 (Pa. Super. 2023), *appeal denied*, 318 A.3d 91 (Pa. 2024).

Regarding Goldberg, the trial court determined:

Katherine Goldberg was a nurse that assisted Dr. Milchak in conducting Decedent's stress test. During oral argument of [m]otions *in* [*l*]*imine*, [Appellant's] counsel stated that she was only calling Nurse Goldberg as a fact witness to testify about findings on the stress echo strips that Nurse Goldberg said were "obvious."

\* \* \*

[The trial c]ourt indicated to [Appellant's counsel] that the testimony would be permitted if Nurse Goldberg testified that she used the information observed on the strips to provide treatment to the Decedent. However, at the time of her deposition on May 6, 2022, Nurse Goldberg had been retired for a period of two years and she testified that she had no independent recollection of the Decedent or the events surrounding his care. As a result, [Appellant's] counsel showed her the strips at issue and asked her to interpret them based on what Nurse Goldberg said would be obvious in just viewing the strips. Since Nurse Goldberg did not utilize [the observations she made at her deposition on May 6, 2022] in her treatment of Decedent, her interpretation of those

- 13 -

> strips at the time of the deposition required specialized knowledge and qualified as expert testimony rather than factual testimony. Nurse Goldberg's findings were no different than any other expert in the case who reviewed the records after the fact and provided an opinion of what those records showed. Therefore, her opinion testimony regarding the test strips was impermissible pursuant to Pa.R.E. 701(c) and [the trial c]ourt did not err or abuse its discretion in excluding the testimony.

Trial Court Opinion, 12/27/2024, at 5-6 (record citations omitted). Moreover, the trial court further noted that even if Appellant had presented Nurse Goldberg as an expert, she was not qualified under "Sections 1303.512(b) and (c) of the MCARE Act because she did not possess a physician's license and was not board certified in the same specialty" as Dr. Milchak. *Id.* at 6, n.1.

We discern no abuse of discretion or error of law in precluding Nurse Goldberg's testimony at trial. Here, there is no dispute that Nurse Goldberg was offered only as a fact witness. *See* N.T., 6/27/2024, at 19 ("Not as an expert, as a fact witness. Simply as a fact witness because she was in[volved with] this stress echo."). The trial court indicated that it would allow Nurse Goldberg's testimony if it related specifically "to her particular care" of Decedent, but noted that "if [Nurse Goldberg was] call[ed] to interpret information two years after the fact," she would need to be qualified "as an expert to render an opinion" but she had not been offered as an expert pursuant to Pa.R.E. 702. *Id.* at 20; *see also id*. at 22 ("[T]o make it factual testimony she has to say that she used that information in how she treated the care of the decedent. If she did that in her deposition, [it is permissible]. If she's just merely interpreting records [based solely upon later review],

that's expert testimony."). Moreover, at no time did Appellant dispute Appellees' contention that Nurse Goldberg did not specifically recall Decedent or the care rendered. ***See*** N.T., 6/27/2024, at 18 ("She testified [by deposition] that she doesn't remember what she saw at the time, she doesn't know what she interpreted at the time. She actually said in her deposition, it's been two years since I've reviewed the strips, I don't feel comfortable reviewing EKG strips and interpreting these."). The record confirms that Nurse Goldberg did not recall how her original interpretation of Decedent's stress echo strips influenced her treatment of his medical condition. As such, she was disqualified from testifying as a fact witness. Moreover, Appellant's reliance upon Nurse Goldberg's expertise and technical experience to suggest she was competent to testify merely highlights the fact that Appellant asked Nurse Goldberg to offer opinions based solely on her scientific, technical, and/or specialized knowledge as an expert under Pa.R.E. 702. Because Appellant merely offered Nurse Goldberg as a fact witness, we discern no abuse of discretion or error of law in precluding her deposition from trial.[5] Accordingly, Appellant's second issue lacks merit.

---

[5] Finally, we note that "this Court also determined that the rules governing expert and lay testimony do not preclude a single witness from testifying, or offering opinions, in the capacity as both a lay and an expert witness on matters that may embrace the ultimate issues to be decided by the fact-finder." ***Commonwealth v. Yocolano***, 169 A.3d 47, 62 (Pa. Super. 2017), *citing* ***Commonwealth v. Huggins***, 68 A.3d 962 (Pa. Super. 2013). However, the witness must be presented in dual capacity and the party offering the testimony must clarify when testimony given in the form of an

*(Footnote Continued Next Page)*

In her third issue presented on appeal, Appellant argues that the trial court erred by not allowing her counsel to cross-examine Dr. Jeffrey Garrett, M.D., cardiologist and defense expert, in detail, regarding his opinion testimony addressed by this Court in *Winschel v. Jain*, 925 A.2d 782 (Pa. Super. 2007). Appellant's Brief at 39-46. Appellant asserts that Dr. Garrett's opinion in *Winschel* was similar to the opinion that he offered in this case. *Id.* at 44 ("Not only was Dr. Garrett's opinion in *Winschel* [] the same opinion that he offered in this case, the facts are almost identical as well."). Appellant posits, however, Dr. Garrett's opinion was excluded from trial in the *Winschel* matter. *Id.* at 40. Appellant concedes that the trial court allowed Appellant's counsel to question Dr. Garrett about his involvement in the *Winschel* case, the opinion he formulated in that case, and whether he remembered that he ultimately was not permitted to provide an opinion in *Winschel*. *Id.* at 40-41. Appellant argues, however, that the trial court erred in prohibiting her counsel's attempts to impeach Dr. Garrett by confronting him about the exclusion of his opinion testimony from the trial record in the *Winschel* case. *Id.* at 44. Appellant argues that the evidence was relevant and that our Court's decision in *Winschel* qualifies as an exception to hearsay under the public records exception pursuant to Pa.R.E. 803(8). *Id.* at 44 ("Dr. Garrett

opinion is based upon expert knowledge or facts personally perceived. *See id.* In such instances, the trial court is further required to instruct the jury regarding lay versus expert testimony and explain that the jurors are solely responsible for credibility determinations. *See id.* Here, Appellant never offered Nurse Goldberg as a dual witness and, as a result, the trial court did not instruct the jury regarding lay versus expert testimony.

was impeached with his previously excluded opinion [and] getting flat-footed is not a basis to preclude from trial relevant evidence used to impeach a witness's credibility."); *see also id.* at 45-46 ("Neither party can credibly dispute that the Superior Court decision that was used to impeach Dr. Garrett was a reliable document [and] a public record."). Appellant contends that she is entitled to a new trial because "the jury did not hear the full impeachment testimony of Dr. Garrett, which goes to his credibility and bias." *Id.* at 46.

On this issue, the trial court determined:

> In ***Winschel v. Jain***, [Winschel] brought suit against a cardiologist, Dr. Jain, alleging that his failure to diagnose an obstruction of the decedent's left coronary artery fell below the standard of care for a cardiologist because he did not recommend a cardiac catheterization despite evidence of decedent's risk factors. [***Winschel***, 925 A.2d] at 786. The defense offered Dr. Garrett as an expert on the applicable standard of care. Dr. Garrett opined that "because Decedent had been referred by his family physician to Dr. Jain only for a stress test, the applicable standard of care in this case required only that Dr. Jain perform the stress test properly and report the results accurately to the referring physician." *Id.* at 796. Further, "the standard of care did not include a duty to make any recommendations for future treatment, based [...] on the cardiologist's knowledge of the potential for false negatives of the tests performed and/or the patient's medical history." *Id.* The trial court excluded [Dr. Garrett's testimony confirming a diminished duty of care in ***Winschel***], finding that a cardiologist has an independent duty to the patient that is not "circumscribed by a referring physician." *Id.* On appeal, Dr. Jain challenged the exclusion of Dr. Garrett's testimony. The Superior Court upheld the [trial] court's exclusion of Dr. Garrett's testimony, holding that Dr. Jain's position "that his duty to Decedent was defined by the referral instructions from Decedent's general practitioner" contradicts precedential law holding that "a specialist physician is held to a higher standard of care than a general practitioner when the specialist is acting within his or her specialty." *Id.* at 797.

- 17 -

[Appellant] argued that Dr. Garrett's expert report and testimony in the current matter was similar to the expert report and testimony provided in *Winschel*; *i.e.*, that [Dr. Michak] did not breach the standard of care because he properly interpreted the stress echocardiogram, which was his only duty that day as a Heart Station doctor, whose role was to do stress tests, read EKGs or echoes, but not do a consultation where a full history is taken and treatment recommendations are made. [Appellees challenged the similarities and raised factual differences on the record in support of an objection.] Despite these similarities, [Appellant] did not ask [the trial c]ourt to exclude Dr. Garrett's expert report and testimony based on the *Winschel* holding. Instead, [Appellant] asked to question Dr. Garrett about the prior exclusion as impeachment testimony, arguing that the fact that his opinion was excluded in another case impacted his credibility when he [entered another courtroom] with the same opinion.

[Appellant] relies on the case of *Commonwealth v. Ballard*, 80 A.3d 380 (Pa. Super. 2013) for the position that cross-examination of an expert witness may include questions regarding the expert's testimony in prior cases and questions pertaining to a case where the expert's opinion is excluded. In *Ballard*, the expert doctor testified that in his expert opinion, the defendant suffered from a mental illness. *Id.* at 395. Previously, a federal district court excluded the same doctor's testimony about a defendant's mental illness because it had minimal probative value and it was confusing to the jury. *Id.* at 395 and n.19. The *Ballard* Court held that it was proper to impeach the expert doctor regarding the prior exclusion of his testimony; however, that holding was not [given broad reach], as the Supreme Court noted that:

> the questions about [the prior case] pushed the bounds of relevancy given the obvious complications involving factual distinctions, different evidentiary standards, and the dubious relevancy of another court's discretionary ruling. To the extent the questioning here could be said to cross the line, we credit the trial court's alternative finding of harmless error, given the strength of the aggravating factors [...].

> *Ballard*, 80 A.3d [at] 397 and n.19.

It is evident from this qualification that the Supreme Court relied heavily on the particular facts of the case before it in reaching its

conclusion and recognized that such impeachment testimony may not be permissible in every case.

Based on the application of the standard for impeachment testimony and the **Ballard** holding to the current case, [the trial court] did allow [Appellant's] counsel to impeach Dr. Garrett by allowing her to question him about his involvement in the **Winschel** case, his opinion in that case, and whether he remembered that he was not permitted to provide that opinion to the jury. Through this testimony, the jury was aware that Dr. Garrett gave a prior opinion, the content of that opinion, that Dr. Garrett still agreed with his position in that opinion, and that the opinion was excluded by another court. The only portion of testimony excluded, as a result of [Appellees'] objection to relevancy and hearsay, regarding the **Winschel** case was [Appellant's counsel's] question that characterized the facts of the **Winschel** case in [Appellant's] counsel's own words and the follow-up questions [counsel asked that pertained] to that characterization. Specifically, after Dr. Garrett indicated that he had no idea if the **Winschel** Court stopped his opinion from going to the jury, [Appellant's] counsel posed the following question:

> The Court didn't allow you to give the opinion. The Court said, no. Cardiologists cannot just act like a radiologist. A cardiologist who has devoted special study and attention to the diagnosis and treatment of cardiac disease, which includes interpretation of results of diagnostic tests, and the appreciation for the significance of family medical history to an individual's diagnosis of cardiac disease and subsequent prognosis must act like a cardiologist. Are you aware of that?

The entire question was based on [Appellant's] counsel's summary, in her own words, of the legal conclusions made in **Winschel** and [Appellant] provided no evidentiary basis for allowing such a summary before the jury. Also, [the trial court] fail[ed] to see how [exclusion of Dr. Garrett's] opinion on an evidentiary basis [made] Dr. Garrett more or less credible in the current matter. Even if it were relevant, it would be highly prejudicial because it would also challenge the accuracy and admissibility of Dr. Garrett's ultimate opinion in the current case that no breach of the standard of care occurred, which [Appellant] did not [seek] to exclude and which was properly before the jury. [Appellant's] counsel's follow-up question to the case summary further establishes this prejudice: "Well the subject of this opinion

that you're here giving today is [ ... ] a published opinion, [ ... ] **it's an opinion that you cannot give** and the Court [in **Winschel**] did not allow you to give. You're not aware of that as we sit here today?" *See* Dr. Garrett's Deposition Transcript, [at 19-20] (emphasis added). If this question were allowed, then the jury would be under the impression that Dr. Garrett's expert opinion regarding the standard of care could not be considered even though no motion or request was made by [Appellant's] counsel to exclude his opinion. Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice or confusion. Therefore, [the trial c]ourt allowed [Appellant] to adequately cross-examine Dr. Garrett regarding the **Winschel** case, and the exclusions made were discretionary in nature, were not in error or an abuse of that discretion, and even if it was in error, it was harmless error because [Appellant] did get before the jury the information that was relevant to the impeachment of Dr. Garrett.

Trial Court Opinion, 12/27/2024, at 7-10 (most record citations, quotations, and case citations omitted; emphasis in original).

Upon review, we agree with the trial court's rationale. Initially, we note that our Supreme Court in **Ballard** has stated

a proper purpose of cross-examination includes attempts to impeach a witness's credibility. It is well-settled that whatever tends to show the interest or feeling of a witness in a cause is competent by way of cross examination. Of course, [a] relevant dispute [may] involve[] the question of which kinds of facts show the interest of a witness. With regard to an expert witness's testimony in prior [proceedings], our Court has addressed this subject before. **See Commonwealth v. Laird**, 988 A.2d 618, 644 (Pa. 2010). However, the appellant in **Laird** framed the issue not as one of relevance, but as implicating prosecutorial misconduct, and the Court addressed it as such. **Id.** [O]ur sister states generally have found [] questioning [about an expert's prior opinion in an unrelated case] proper, so long as the prosecution does not elicit superfluous facts from prior cases that might confuse the jury.

First, we find no reason [] to reject the general proposition, recognized in other jurisdictions, that a mitigation expert in a

- 20 -

capital sentencing hearing may be questioned about his personal beliefs about the death penalty, **or about his testimony in prior cases**, in order to attempt to establish a testimonial pattern and expose possible bias - so long as the questions are limited to an appropriate number and type of cases, and the thrust of the testimony in those cases.

*Ballard*, 80 A.3d at 396–398 (most case citations and quotations omitted; brackets and emphasis added).

Ultimately, our Supreme Court in *Ballard* found "no abuse of discretion in the trial court finding that [the expert's] opinion of the death penalty, his testimony in prior cases, and the fact of the exclusion of his testimony in [a prior, unrelated case], were proper areas of inquiry in an attempt to establish that the doctor was an expert with a defense bias in capital cases." *Id.* at 397. However, the *Ballard* Court also determined that although there was no abuse of discretion about questioning an expert about a prior case, our Supreme Court judicially cautioned that such questioning should not "push[] the bounds of relevancy given the obvious complications involving factual distinctions, different evidentiary standards, and the dubious relevance of another court's discretionary rulings." *Id.* at 398 n.19. As such, the *Ballard* Court determined that "[t]o the extent" that cross-examination "could be said to cross the line," an appellate court may consider an "alternative finding of harmless error[.]" *Id.*

Here, there is no dispute that the trial court allowed counsel for Appellant to question Dr. Garrett, in a video-taped deposition played for the jury, about his involvement in the *Winschel* case, his opinion in that case, and whether he remembered that he was not permitted to provide an opinion

in that matter. ***See*** N.T., 7/3/2024, at 495-497 ("Whereupon, the videotaped deposition of Jeffrey Garrett, M.D. was played for the jury."); ***see also*** Appellee's Brief, Exhibit D, Transcript of Videotaped Deposition of Jeffrey S. Garrett, M.D., 6/23/2024, at 114-120; ***see also*** R.R. at 227-229. Dr. Garrett stated that he did not recall the ***Winschel*** case because it had been decided 20 years prior. ***Id.*** There was no abuse of discretion in permitting cross-examination about the expert's opinions regarding a prior decision. The jury was permitted to hear proper areas of inquiry in an attempt to establish that Dr. Garrett was an expert with a bias for the defense.

However, as ***Ballard*** makes clear, additional lines of inquiry about ***Winschel*** were impermissible. Quite simply, Appellant was not permitted to elicit superfluous facts about ***Winschel*** that might confuse the jury in light of obvious complications involving factual distinctions, different evidentiary standards, and the dubious relevance of the ***Winschel*** Court's discretionary rulings. As such, we discern no abuse of discretion or error of law in precluding Appellant from additional cross-examination of Dr. Garrett. Accordingly, Appellant's final appellate claim lacks merit.

Judgment affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 1/23/2026

- 22 -